

**T**HE **C**ITY OF **N**EW **Y**ORK
**L**AW **D**EPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

ZACHARY W. CARTER
*Corporation Counsel*

Zachary Russell Bergman
Assistant Corporation Counsel
Phone: (212) 356-5051
Fax: (212) 356-3509
zbergman@law.nyc.gov

August 3, 2018

**BY ECF**
Honorable Ramon E. Reyes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Rodriguez v. City of New York, et al., 16 CV 5861 (NG) (RER)

Your Honor:

I am an Assistant Corporation Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and an attorney representing the defendants in the above-captioned case. Defendants respectfully write in response to plaintiff's July 30, 2018 motion for sanctions, which is based on the recent disclosures of two tape-recorded interviews and information regarding the identity of non-party witness Leonardo Flores, which were made before the close of discovery on July 25, 2018.[1] (Docket Entry No. 45) Therein, plaintiff requests fees and costs associated with his application that the Court preclude defendants from: using plaintiff's deposition; calling Mr. Flores as a witness at trial; and relying on the above-mentioned tape-recorded interviews. For the reasons set forth below, defendants respectfully request that the Court grant an extension of discovery for the limited purposes of (1) re-deposing the plaintiff; and (2) providing plaintiff with an opportunity to depose non-party witness Leonardo Flores, should he wish to do so. Furthermore, given the necessity of further discovery caused by both plaintiff's and defendants' recent disclosures, defendants respectfully submit that sanctions are not warranted against either side.

Despite continuing good faith efforts to comply with both the Federal Rules of Civil Procedure and this Court's discovery orders, a confluence of events affected the timeliness of certain disclosures. In addition to an investigation conducted by the Civilian Complaint Review Board, multiple internal investigations into the incident alleged by plaintiff were conducted in 2015. The NYPD's recordkeeping system in place at the time of the original investigations in 2015 – which has now been substantially centralized and is no longer in use by

---

[1] Plaintiff incorrectly states in his letter that he had not been provided with Mr. Flores's address at the time of filing. Rather, defendants provided Mr. Flores's last known address to plaintiff via email on July 26, 2018.

the NYPD – resulted in relevant documents being maintained in various locations. As a result, it appears that defendants initially failed to retrieve all of the necessary files from the various locations where they were stored.[2] As such, defendants acknowledge that the abovementioned documents, which were on file with the QNIU and disclosed before the close of discovery, should have been produced at the outset of the litigation.[3] Defendants are mindful of the Court's recent decision in Brown v. City of New York, 15-CV-4488 (KAM) (RER) (Oct. 11, 2017), report and recommendation adopted 2018 WL 3193208 (E.D.N.Y. June 28, 2018) and submit that both parties may have run afoul of the spirit of the Court's decision. However, unlike in Brown, we do not believe the conduct at issue here warrants sanctions.

To that end, defendants note that they were prejudiced by several recent disclosures made by plaintiff, who thus seeks sanctions with unclean hands. As outlined in defendants' July 27, 2018 letter (Docket Entry No. 44), plaintiff, during his deposition, testified that he incurred head injuries, including a concussion, and significant psychological injuries. Those injuries were not set forth in any of his prior disclosures.[4] Plaintiff also testified that he received treatment in connection with the underlying incident from two providers who were never previously disclosed. Later, on the eve of the close of discovery, plaintiff emailed defendants "Plaintiff's Rule 26(e) Supplemental Disclosures" and, for the first time, enumerated traumatic brain injuries and non-garden-variety psychological injuries as damages incurred. Additionally, plaintiff provided HIPAA authorizations for records maintained by four different medical providers. Plaintiff also provided records that indicate that Dr. Golzad saw plaintiff on July 10, 2018, eight days before plaintiff's deposition. Nevertheless, plaintiff failed to notify defendants that he saw Dr. Golzad or otherwise provide any information prior to the deposition regarding the newly alleged injuries.

---

[2] The discovery issues in this case were further compounded, upon information and belief, by the fact that the Queens North Investigative Unit ("QNIU") "re-opened" a 2015 investigation of the subject incident during the pendency of this litigation as a result of a news article quoting plaintiff's counsel in the New York Daily News on April 22, 2018. Upon information and belief, the NYPD Police Action Litigation Section ("PALS") provided this Office with various items included in QNIU's investigatory file that were responsive to the Court's prior discovery orders and to plaintiff's demands, though contrary to established procedure regarding open investigations. Upon information and belief, those documents were provided to this Office under the belief that the re-opened investigation would be closed as either "unsubstantiated," consistent with the disposition of the initial investigation, or as "Information & Intelligence," meaning that the allegation(s) did not call for a full investigation and/or the content of the allegation is being filed for future reference. To that end, defendants have disclosed today the content of the QNIU 2015 file, which was received by this Office several days ago. The contents of that file are almost entirely duplicative of prior productions to plaintiff.

[3] Defendants note that the recently produced discovery is actually beneficial to them, and defendants did not withhold it in an effort to prejudice plaintiff. Defendants believe that plaintiff's First Hospital Interview is helpful insofar as plaintiff made numerous statements that contradict his 50-h testimony, which was given before the outset of this litigation. With respect to Mr. Flores, he stated to investigators that he was stopped by two police officers, that he observed two bicyclists going the wrong direction, that they were told to stop, and that they instead fled, which also casts doubt on plaintiff's version of events. Defendants did not have an incentive in a withholding of any of this information from plaintiff.

[4] Plaintiff, in an August 2, 2018 letter, indicated that Dr. Guy opined that plaintiff incurred post-concussion syndrome. (Docket Entry No. 46) Dr. Guy's report, however, does not indicate that he ever physically examined plaintiff's head or reviewed any documentation indicating plaintiff had post-concussion syndrome. Rather, it appears that Dr. Guy examined a CT scan which showed no acute intracranial pathology (Docket Entry No. 46-1), and, further, plaintiff testified at his deposition that he did not know who Dr. Guy was and did not recall meeting with Dr. Guy or any other doctors in April of 2018.

Moreover, defendants were also deprived of an opportunity to depose plaintiff about certain photographs he took, but failed to disclose. Specifically, plaintiff testified at his deposition that he may have taken photographs of his injuries and that he was never asked to do a search for them. When asked about plaintiff's testimony, counsel indicated in a July 24, 2018 email that plaintiff had actually taken photographs of the incident location, and plaintiff then provided same to defendants. Defendants had specifically demanded on June 27, 2017 that plaintiff provide photographs in his possession of the incident location. As a result of plaintiff's failure to timely disclose these photographs, defendants were deprived of an opportunity to question plaintiff at his deposition. Defendants did not previously raise the issue with the Court because they did not deem the issue worthy of a sanctions motion just as we do not believe the conduct complained of by plaintiff is sanctionable.

Consequently, despite some similarities, defendants' conduct is distinguishable in material ways from the sanctionable conduct at issue in Brown. Notably, in Brown, the disclosures at issue were made after the close of discovery and involved a "long sought" recording. Brown, 15 CV 4488 (KAM) (RER) (Docket Entry No. 58, at p.1). Here, plaintiff, who filed a motion to compel the production of other documentation, did not raise these specific concerns until the end of the discovery period, and the documents were immediately located and provided to plaintiff upon plaintiff's counsel's inquiry. Further, unlike in Brown, the need for an extension of discovery and further questioning of plaintiff is necessitated here, in part, by plaintiff's own recent disclosures. Thus, a corresponding sanction of fees and costs is unwarranted in light of the circumstances.

Given the above, defendants do not object to plaintiff's request to preclude the use of his July 18, 2018 deposition at trial. However, in light of defendants' pending application to extend discovery due to plaintiff's own recent material disclosures (Docket Entry No. 44) – to which plaintiff initially consented[5] – defendants respectfully submit that a re-deposition of plaintiff would eliminate any prejudice plaintiff may have sustained by being deprived of an opportunity to appropriately review his First Hospital Interview prior to his deposition and eliminate any prejudice defendants incurred because of plaintiff's recent medical disclosures and the disclosures of the aforementioned photographs.[6] Furthermore, because defendants disclosed the identity of non-party witness Leonardo Flores during discovery and before any trial date has been set, preclusion is not warranted. See Fed. R. Civ. Proc. 26(a)(3)(B). Rather, plaintiff should be provided with an opportunity to depose Mr. Flores, should he wish to do so. In light of the fact that each party was prejudiced by discovery conduct, and in recognition of the necessity of further discovery on both sides, defendants respectfully submit that extending discovery in order to permit the parties to re-depose plaintiff and depose Mr. Flores would cure any prejudice suffered by either party.

---

[5] Plaintiff apparently withdrew his consent, in part, in a letter dated August 2, 2018. (Docket Entry No. 46) Therein, plaintiff states that he was only made aware of defendants' motion for an extension of discovery the morning it was made, but that was because defendants only became aware of plaintiff's disclosures at approximately 8:40 p.m. the night prior, on the eve of the close of fact discovery. The parties also met in person and spoke on the telephone for approximately one hour regarding defendants' motion. Conversely, plaintiff did not reach out to defendants regarding the specific nature of the sanctions plaintiff intended to seek prior to the filing of his motion.

[6] Plaintiff presumably was aware of the content of his own statements prior to receiving the audio recording of same given that he was the subject of the interview on the recording.

In light of the above, and given that plaintiff initially consented to defendants' motion to re-open plaintiff's deposition stemming from his own recent disclosure (Docket Entry No. 44), defendants submit that extending discovery for the limited purpose of re-taking plaintiff's deposition and permitting plaintiff time to take Mr. Flores's deposition, to the extent he wishes to do so, would resolve the purported prejudice suffered by both of the parties. Defendants, accordingly, respectfully request the Court grant a limited reopening of discovery for those purposes and deny plaintiff's request for sanctions.

Thank you for your consideration herein.

Respectfully submitted,
/s/
Zachary Russell Bergman
*Assistant Corporation Counsel*

cc: Gabriel Harvis, Esq. (By ECF)
Baree N. Fett, Esq.
*Attorneys for Plaintiff*