```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

-------------------------------X
                               :
HEINS RODRIGUEZ,               :
                               :   16-CV-05861 (NG)
          Plaintiff,           :
                               :
     v.                        :
                               :   January 8, 2019
CITY OF NEW YORK, et al.,      :   Brooklyn, New York
                               :
          Defendants.          :
                               :
-------------------------------X
```

   TRANSCRIPT OF CIVIL CAUSE FOR FINAL PRETRIAL CONFERENCE
         BEFORE THE HONORABLE RAMON E. REYES, JR.
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | GABRIEL P. HARVIS, ESQ. |
| | BAREE N. FETT, ESQ. |
| | Elefterakis Elefterakis & Panek |
| | 80 Pine Street, 38th Floor |
| | New York, New York 10005 |
| | |
| For the Defendant: | JOSEPH A. GUTMANN, ESQ. |
| | KEVIN J. KELLY, ESQ. |
| | NYC Law Department |
| | 100 Church Street |
| | New York, New York 10007 |
| | |
| Court Transcriber: | MARY GRECO |
| | TypeWrite Word Processing Service |
| | 211 N. Milton Road |
| | Saratoga Springs, New York 12866 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service

2

1   (Proceedings began at 2:59 p.m.)
2              THE CLERK:  Civil Cause for Final Pretrial
3   Conference, Docket Number 2016-CV-5861, Rodriguez v. City of
4   New York.  Counsel for plaintiff, please state your name for
5   the record.
6              MR. HARVIS:  Good afternoon, Your Honor.  Gabriel
7   Harvis for the plaintiff.
8              THE COURT:  Good afternoon.
9              MS. FETT:  Good afternoon, Your Honor.  Baree Fett
10  for the plaintiff, Heins Rodriguez.
11             THE COURT:  Good afternoon.
12             THE CLERK:  Counsel for the defendants, please state
13  your name for the record.
14             MR. GUTMANN:  Joseph Gutmann from the Office of the
15  Corporation Counsel for the City defendants.  Good afternoon,
16  Your Honor.
17             MR. KELLY:  Kevin Kelly, Office of the Corporation
18  Counsel for defendants.  Good afternoon, Your Honor.
19             THE COURT:  Good afternoon.  Okay.  And I used all
20  caps back in September when I granted your most recent motion
21  for extension of discovery, no further extensions for any
22  reason whatsoever.  So that means that you're done with your
23  discovery, right?
24             MR. GUTMANN:  Yes, Your Honor.
25             MR. HARVIS:  Yes, Your Honor.

3

```
 1                THE COURT:  Wonderful.  Next step is what?
 2                MR. GUTMANN:  At this point, Your Honor, the
 3   defendants would look to file at a minimum a partial motion
 4   for summary judgment.  We haven't had a chance to confer with
 5   plaintiff's counsel.  There may be opportunities to see if we
 6   can get some claims voluntarily dismissed which might obviate
 7   the need.  But either way, we would like a schedule in place
 8   for a motion.
 9                THE COURT:  What claims are you going to seek
10   summary judgment on?
11                MR. GUTMANN:  At a minimum, Your Honor, is a failure
12   to intervene claim and negligent infliction of emotional
13   distress claim, negligent retention of hiring claim which is
14   sort of subsumed with the negligence claim.  And to the extent
15   that states a Monell claim as well, we'd move on that.  Not
16   entirely clear from the complaint.  Those are the claims we'd
17   certainly be moving on.  We'd also likely be moving on the
18   denial of a right to search file claim.  Essentially all
19   claims except for excessive force and assault and battery
20   which we're not certain we're moving on yet.
21                THE COURT:  You filed a notice of claim?
22                MR. HARVIS:  Yes we did, Your Honor.
23                THE COURT:  So how would you get assault and battery
24   kicked on summary judgment if the excessive force is going?
25                MR. GUTMANN:  Well, Your Honor, the excessive force
```

4

1  -- I'm sorry, can Your Honor repeat the question?
2             THE COURT:  Yes.  I mean assault and battery is just
3  to state in this context, correct me if I'm wrong, is a state
4  analog to excessive force.
5             MR. GUTMANN:  Yes, Your Honor.
6             THE COURT:  It's the same thing.  So if excessive
7  force is going forward, why wouldn't the assault and battery
8  go forward?
9             MR. GUTMANN:  Well, I think they're sort of
10 duplicative in that sense as Your Honor is saying.  But I
11 think there's a possibility we'd move for both.
12            THE COURT:  How do you get the excessive force claim
13 kicked?
14            MR. GUTMANN:  Lack of intent.  The claim requires an
15 intent on the part of the officers and we don't believe that's
16 been established here.
17            THE COURT:  All right.  So if that is the case,
18 let's say there was no intent, they just negligently bumped
19 him with a car.  Don't you fall into assault and battery or at
20 least -- yes, you can have negligent assault, right?
21            MR. HARVIS:  Oh, absolutely you can, yeah.  It's a
22 state law claims so you don't need to show intentional
23 conduct.  You can definitely do it with the negligence
24 standard.  But I think we think that would be a question of
25 fact for the jury about the officer's state of mind.

```
                                                                    5
 1                THE COURT:  All right.
 2                MR. HARVIS:  May I say something, Your Honor?
 3                THE COURT:  Sure.
 4                MR. HARVIS:  I just want to note --
 5                THE COURT:  Are you going to move for summary
 6   judgment?
 7                MR. HARVIS:  I was going to say I just want to note
 8   for the record that yeah, we're also contemplating a partial
 9   motion for summary judgment.
10                THE COURT:  On?
11                MR. HARVIS:  On the fair trial claim and on the
12   assault and battery excessive force claim.  We think the video
13   allows the Court to conclude that what happened -- because in
14   this case there's specific provisions in the patrol guide that
15   govern how you can do a pursuit.  It applies usually in the
16   context of a vehicle.  But our position is that if you're
17   pursuing a bicycle, you have to take even more care than you
18   would with another car because the risk of injury is higher.
19   And it specifically says you may not drive alongside of
20   someone else when you're pursuing them in a vehicle.  And so
21   we want to present that to Judge Gershon to say that that
22   means that you a fortiori cannot do it when you're chasing a
23   bicycle.  It's evident on the video that they did that.
24   Therefore, they haven't met the standard of care and therefore
25   we prove our negligence, our assault and battery as a matter
```

6

1  of law.  I actually think the fair trial claim is even
2  stronger on our side because we have the video evidence that
3  shows him calmly presenting himself for handcuffing and the
4  officers filled out affidavits swearing that he was flailing
5  his arms.  And that's just one aspect of the fair trial claim
6  that we think we can move on.
7          We also think that we can move on -- forgive me one
8  second.
9                  [Pause in Proceedings.]
10         MR. HARVIS:  And another issue, Your Honor, is that
11 it's undisputed that the arresting officer initially tells the
12 DA that Mr. Rodriguez went through a steady red light when in
13 fact there is no red light at the intersection that he was
14 alleged to have gone through.  So we think that since that was
15 an admitted false statement, albeit one that he later
16 corrected, we think that could also support our motion.
17         And I'd also like to just address the -- for the
18 same reason that we think we may have a potential motion on
19 the assault and battery claim, we also think we have a very
20 strong claim as to negligent training for the very same
21 reason, because if the officers had been adequately trained,
22 they wouldn't have pursued him in that manner and none of this
23 would have happened.  So I don't think we're going to move on
24 that but I just wanted to say I think we're going to end up
25 prevailing on that.

7

1  THE COURT: Who are the witnesses here? Regardless
2  of what the claims are.
3  MR. HARVIS: So as to the initial --
4  THE COURT: The people who will be testifying.
5  MR. HARVIS: Yeah. I mean it's really just going to
6  be the police officers and the plaintiff. I mean there is one
7  other person who hasn't been deposed whose car was hit who
8  claims he didn't see anything. And then there was that
9  witness who was late disclosed and when we took efforts to
10 depose them, they never showed up, so I'm assuming they're not
11 going to testify.
12 THE COURT: Okay. And the documentary evidence is
13 pretty minimal putting aside his medical records, correct?
14 MR. HARVIS: Yeah. I mean there was no pursuit
15 report done but there was one of the accident reports you see
16 when there are two cars involved in an accident and then there
17 was just the standard arrest paperwork that you would go out
18 and a medical treatment prisoner form. Not a lot of
19 documents.
20 THE COURT: Disciplinary records and things like
21 that?
22 MR. HARVIS: Yeah. I mean that may come in on the -
23 - well, let me just say this. The officer who struck
24 plaintiff as hit two other civilians with his police car. So
25 I do think that when we get to the time of trial we're going

8

1 to make arguments about the admissibility of some of that
2 stuff but I don't think it's going to be germane to the
3 summary judgment motion practice.
4       THE COURT: Those Judge Gershon have a pre-motion
5 letter requirement?
6       MR. HARVIS: Yes, Your Honor.
7       THE COURT: Okay. So you're moving on again the
8 assault and battery, the excessive force? No.
9       MR. HARVIS: And the fair trial. Yeah, we're not
10 sure about excessive -- we're not sure about anything.
11 Potentially we're looking at fair trial and assault and
12 battery, less likely on excessive force just because the
13 intent is going to end up being so important in the excessive
14 force context.
15       THE COURT: Aren't these -- well, the evidence that
16 would go to liability on excessive force, assault and battery
17 --
18       MR. HARVIS: The video.
19       THE COURT: The video.
20       MR. HARVIS: And the patrol guide.
21       THE COURT: Descriptions of the -- well, maybe not
22 the patrol guide but the video, the descriptions from the
23 witnesses, all of that not only goes to liability but it goes
24 to damages too, yes? Because the jury is going to have to
25 determine the extent of his injuries, whether they were caused

9

1  by the conduct.  So they're going to need to know how it
2  happened.  Where I'm going at with all these questions about
3  who are the witnesses, what are the documents, all of that is
4  it's likely that there will be some form of trial.
5           MR. HARVIS:  Correct.  There are claims no one's
6  moving on.
7           THE COURT:  Right?
8           MR. HARVIS:  Yeah.
9           THE COURT:  Whether there's claims that no one's
10 moving on or there are issues related to the claims that
11 people are moving on, that will need to be heard and the
12 evidence on those aspects of the claims like damages for
13 excessive force, assault and battery, you know, that all is
14 going to be aired.  And so maybe the trial, whatever the
15 scope, is really going to be the trial regardless of what is
16 part of that, what claims.  You know, so if you've got three
17 people who are going to testify about the incident, you've got
18 doctors of course --
19          MR. HARVIS:  Right.
20          THE COURT:  -- but they would testify anyway because
21 you're going to have to deal with damages.  So summary
22 judgment motions are not going to change to any great extent
23 the length of the trial or what would go into a joint pretrial
24 order.
25          MR. HARVIS:  I believe that's correct.  I just would

10

1  say from our point of view, it's our position that the less --
2  the more cabined the jury's consideration is I think the
3  better it is going to be for Mr. Rodriguez.  So to the extent
4  we can establish, or try to establish liability in advance, I
5  think that's in his interest.
6           THE COURT:  That's fine, that's fine.  I need to tee
7  this up for Judge Gershon in a way that she would consider to
8  be efficient and whether it's what I would consider to be
9  efficient or not.  But it's probably the same thing.  So the
10 way I see it is you should certainly go ahead and write
11 whatever pre-motion letters you want to her and respond to
12 them.  And at the same time that she is considering those
13 letters, getting you in for a pre-motion conference and
14 deciding whether to allow you to move, and if she decides to
15 allow you to move, you should be doing a joint pretrial order.
16          MR. HARVIS:  That sounds --
17          THE COURT:  Because I mean you've got to do your --
18 if you're going to do your summary judgment motions, you're
19 going to be looking at the evidence and doing your 56.1
20 statements and all that.  So that's similar to putting
21 together a joint pretrial order, right?  See what your
22 exhibits are, you'll see who your witnesses are, what their
23 deposition transcripts to designate and all that stuff.  So
24 you'll have your joint pretrial order done.  Maybe while the
25 summary judgment motion is being decided, and once it's

                                                                    11

1    decided if there is anything else to try which -- I mean it's
2    possible that there's nothing to try if the City hits it out
3    of the park --
4              MR. HARVIS:  Right.
5              THE COURT:  -- and decides to move on everything and
6    hits it out of the park, right?
7              MR. HARVIS:  Sure.  Conceivably.
8              THE COURT:  And so you spent a little time putting
9    together a joint pretrial for no reason.  But if what I think
10   is going to happen is there'll be something to try because
11   there's going to be a dispute, you'll turn around in a couple
12   of weeks and have a trial.
13             MR. HARVIS:  I like that idea.
14             THE COURT:  Okay.
15             MR. GUTMANN:  Sounds fair.
16             THE COURT:  All right.  So when do you want to send
17   your letters to Judge Gershon about summary judgment?
18             MR. HARVIS:  If it please the Court, we have a lot
19   going on between now and the first week of February.  If we
20   could possibly do it in the second week of February, that
21   would be preferable for us.
22             THE COURT:  February 8th?
23             MR. GUTMANN:  Your Honor, I apologize but this seems
24   like a good time.  I'm on trial starting January 22nd, likely a
25   week long trial.  So I would ask for even further out if

1  plaintiff's counsel wouldn't mind, a couple of extra weeks
2  beyond that.
3           MR. HARVIS:  I don't have any -- I'm going to be out
4  of town from the 18th to the 24th of February, so if we could
5  avoid that?
6           THE COURT:  February 15th.
7           MR. HARVIS:  There we go.
8           THE COURT:  Oh wait a second, no, no, no.
9           MR. HARVIS:  Will the government not be funded by
10 then, Your Honor?
11          THE COURT:  Well no, they're funded.  They got -- de
12 Blasio's got plenty of money.  If you have a week long trial
13 on the 22nd, so you're done the 29th.  All right.  The letters,
14 the 8th of February.  The responses, the 15th.  And then you're
15 away the following week.
16          MR. HARVIS:  Right.  Okay that's fine.  Yes, we'll
17 make that work, Your Honor.
18          THE COURT:  All right.  And then a joint pretrial
19 order, I will have that due March 29th.  I will not give you a
20 deadline for in limine motions or any of that other trial
21 stuff because the trial likely would not be immediately after
22 that, so you'll have time to put it together.
23          MR. HARVIS:  I'm sorry, Your Honor.  You know, Ms.
24 Fett is reminding me, so we have a two-day settlement
25 conference in a wrongful conviction case on the 7th and 8th of

                                                                    13

1  February and I'm just being realistic about our time
2  availability and I think it might be prudent to push it, if
3  it's possible and Your Honor's okay with it, to the end --
4  have our letters filed like on the 25th -- I'm sorry, I'm
5  looking at the calendar now.  Like the 26th or 27th and then
6  just a week to respond.
7           THE COURT:  You're out February 18th?
8           MR. HARVIS:  Two the 24th.
9           THE COURT:  The 24th?
10          MR. HARVIS:  Yeah.  I could do it in two days.  It's
11 just if I'm in a settlement conference all day it's going to
12 be very difficult.  That's why the 8th is difficult.
13          MR. GUTMANN:  And that would be defendant's
14 preference as well just because of the same thing, a lot going
15 on.
16          THE COURT:  So you want the letters on the 26th and
17 then the responses when?
18          MR. HARVIS:  I was thinking a week later, the 5th.
19          THE COURT:  5th?  All right.  Fine.
20          MR. HARVIS:  Thank you, Your Honor.
21          MR. GUTMANN:  Thank you, Your Honor.
22          THE COURT:  Joint pretrial order March 29th, so
23 you're going to have to turn around and get that done.
24          MR. HARVIS:  No problem.
25          THE COURT:  All right.  So what do the experts say

14

1  about Mr. Rodriguez?  Does he have a traumatic brain injury or
2  not?
3          MR. HARVIS:  Well, we don't really know, Your Honor,
4  because our expert says he does and then their expert is an
5  orthopedist who's looking at his knee.  And so I think it's
6  unclear what the other side --
7          THE COURT:  Who's your expert?
8          MR. HARVIS:  Ours?
9          THE COURT:  Yes.  The TBI expert.
10         MR. HARVIS:  Well, we had David Capiola [Ph.] is the
11 guy who is -- I'm sorry, no, it's not.  Excuse me.  It's
12 Goldsat [Ph.], right?  The TBI expert is Dr. Goldsat.  So he's
13 really badly hurt to be honest.  It seems like it's getting
14 worse.
15         MR. GUTMANN:  Did we receive an expert report on
16 Goldsat?
17         MR. HARVIS:  No, you got all those treatment reports
18 of him with his various diagnoses.
19         MR. GUTMANN:  I mean to the extent -- I mean we
20 don't have to have this right now but to the extent is being
21 called as an expert witness we need an expert report.  It's
22 required.
23         MR. HARVIS:  Well, he's a treater, so yeah.
24         MR. GUTMANN:  But then you're calling him as a
25 treater.  That's a very different thing.

1           THE COURT:  Well --
2           MR. HARVIS:  Treating expert.
3           MR. GUTMANN:  Well, we can have this by another day,
4  Your Honor, but it's a fight that will be had.  And then the
5  other thing I just bring to Your Honor's attention is that
6  Your Honor had made a previous ruling on this that stated that
7  all records after a certain date were excluded from this case
8  for a variety of reasons.  And I believe most if not all of
9  those records fall under that category.
10          MR. HARVIS:  Well actually what happened was Your
11 Honor did make a ruling like that.  Then we had additional
12 colloquy.  Your Honor indicated an openness for
13 reconsideration and I believe the way it was left was that it
14 would go to Judge Gershon and she would decide what she wanted
15 to do.  And actually, I think that what Your Honor said --
16          THE COURT:  I remember this came up but I don't
17 remember what I said, so --
18          MR. HARVIS:  Yeah.
19          MR. GUTMANN:  We have the transcript, Your Honor.
20          THE COURT:  Whatever's in the transcript.
21          MR. GUTMANN:  No use us debating it.
22          MR. HARVIS:  Yeah, we have the transcript.  But you
23 know, one thing that Your Honor did say was that they should
24 send him to a TBI specialist and they should arm themselves
25 were the words Your Honor used in order to be prepared to meet

```
 1  our, you know, doctors and they elected not to do that.
 2            THE COURT:  It is what it is.  All right.  Good
 3  luck.
 4            MR. HARVIS:  Thank you very much, Your Honor.
 5            MR. GUTMANN:  Thank you, Your Honor.
 6            MS. FETT:  Thank you, Your Honor.
 7            MR. HARVIS:  It's nice to see you.
 8            THE COURT:  Good to see you.
 9  (Proceedings concluded at 3:18 p.m.)
10                        *  *  *  *  *  *
```

17

1   I certify that the foregoing is a court transcript from
2 an electronic sound recording of the proceedings in the above-
3 entitled matter.
4
5                                   *Mary Greco*
6                                     Mary Greco
7 Dated:  February 2, 2019