# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

HEINS RODRIGUEZ,

                      Plaintiff,

            v.

CITY OF NEW YORK, et al.,

                Defendants.

**16 CV 5861 (NG) (RER)**

 

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

 

ELEFTERAKIS, ELEFTERAKIS & PANEK

Gabriel P. Harvis
Baree N. Fett
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

May 10, 2019

## TABLE OF AUTHORITIES

Page

Table of Authorities _____ i

1. Introduction _____ 1

2. The Summary Judgment Standard _____ 2

3. Argument _____ 3

    a. Under Valid Alternative Theories of State Law Liability,
    Defendants Assaulted Plaintiff or, at the very least, Were
    Negligent in Conducting the Pursuit _____ 3

        i. Defendants' Vehicle is Subject to the Rules of the Road _____ 5

            1. VTL § 1146(a) _____ 6

            2. VTL § 1122-a _____ 7

            3. New York City Traffic Rules and Regulations _____ 7

            4. NYPD Patrol Guide _____ 8

        ii. Common-Law Standard of Care _____ 9

        iii. Plaintiff was Not Negligent, and Defendant Zheng has No
        Excuse for Violating Traffic Rules _____ 10

        iv. The Surveillance Video and Other Evidence Proves
        Assault and Excessive Force Under the Fourth Amendment ___ 11

        v. The Surveillance Video and Other Evidence Also Establishes
        Excessive Force Under the Fourteenth Amendment _____ 14

    b. Defendants Fabricated Evidence _____ 15

        i. Resisting Arrest _____ 16

        ii. The Red Light _____ 17

        iii. Disorderly Conduct _____ 18

4. Conclusion _____ 19

CASES

*5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186 (S.D.N.Y. 2010) _____ 11
*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113 (2d Cir. 2004) _____ 2
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) _____ 2, 3
*Bolta v. Lohan*, 242 A.D.2d 356 (2d Dept. 1997) _____ 6
*Boltax v. Joy Day Camp*, 67 N.Y.2d 617 (1986) _____ 9
*Brower v. County of Inyo*, 489 U.S. 593 (1989) _____ 12
*Brown v. City of New York*, 2013 WL 491926 (S.D.N.Y. 2013) _____ 11
*Bussolari v. City of Hartford*, 14 CV 149 (JAM), 2016 WL 4272419 (D. Conn. Aug. 12, 2016) 4
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) _____ 2
*Cerbelli v. City of New York*, 99 CV 6846 (ARR), 2008 WL 4449634 (E.D.N.Y. Oct. 1, 2008) 9
*Davis v. Little*, 851 F.2d 605 (2d Cir. 1988) _____ 13
*Delgado v. Martinez Family Auto*, 113 A.D.3d 426 (1st Dept. 2014); _____ 5
*Dershowitz v. United States*, 12 CV 8634 (SN), 2015 WL 1573321 (S.D.N.Y. Apr. 8, 2015) __ 7
*Duartes v. Cty. of Nassau*, 07 CV 2929 (JS) (WDW), 2008 WL 11449235 (E.D.N.Y. Sept. 30, 2008) _____ 4
*Duncalf v. Swamsington*, 05 CV 7020 (PAC), 2007 WL 2387968 (S.D.N.Y. 2007) _____ 6
*Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018) _____ 14
*Elliot v. New York*, 95 N.Y.2d 730 (2001) _____ 8
*Elliott v. City of New York*, 95 N.Y.2d 730(2001) _____ 5
*Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192 (1st Dept. 2013) _____ 9
*Gaillard v. Commins*, 562 F. App'x 870 (11th Cir. 2014) _____ 13
*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) _____ 15
*Graham v. Connor*, 490 U.S. 386 (1989) _____ 12
*Gray v. Wackenhut Svcs., Inc.* 721 F. Supp. 2d 282 (S.D.N.Y. 2010) _____ 5
*Gray v. Wackenhut Svcs., Inc.*, 721 F. Supp.2d 282 (S.D.N.Y. 2010) _____ 6
*Hansel v. Sheridan*, 991 F.Supp. 69 (N.D.N.Y. 1998) _____ 4
*Harris v. City of New York*, 222 F. Supp. 3d 341 (S.D.N.Y. 2016) _____ 15
*Heath v. Henning*, 854 F.2d 6 (2d Cir. 1988) _____ 13
*Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67 (E.D.N.Y. 2012) _____ 4
*Hulett v. City of Syracuse*, 253 F. Supp. 3d 462 (N.D.N.Y. 2017) _____ 11
*Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014) _____ 2
*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973) _____ 15
*Jones v. Howard*, 15 CV 902 (GLS) (TWD), 2018 WL 3432713 (N.D.N.Y. July 16, 2018) _ 3, 4
*Kingsley v. Hendrickson,* 135 S.Ct. 2466 (2015) _____ 14, 15
*Loftin v. City of New York*, 15 CV 5656 (MKB), 2017 WL 3614437 (E.D.N.Y. Aug. 21, 2017) 17
*Mark v. Gawker Media LLC*, 13 CV 4347 (AJN), 2016 WL 1271064 (S.D.N.Y. Mar. 29, 2016) 2
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) _____ 2, 3
*Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) _____ 17
*Palma v. Sherman*, 55 A.D.3d 891 (2d Dept. 2008) _____ 6, 10
*Polanco v. City of New York*, 14 CV 7986 (NRB), 2018 WL 1804702 (S.D.N.Y. Mar. 28, 2018)3
*Rafferty v. Arnot Ogden Memorial Hosp*, 140 A.D.2d 911 (3rd Dept. 1988) _____ 5
*Rasanen v. Doe*, 723 F.3d 325 (2d Cir. 2013) _____ 11
*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) _____ 15

*Rodriguez v. Cato*, 63 A.D.2d 922 (1st Dept. 1978) _____ 8

*Santana v. De Jesus*, 110 A.D.3d 561 (1st Dept. 2013) _____ 7

*Scott v. Harris*, 550 U.S. 372 (2007) _____ 3, 4

*Sullivan v. Gagnier*, 225 F.3d 161 (2d Cir. 2000) _____ 11

*Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013) _____ 17

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) _____ 15

## STATUTES

34 RCNY § 4-02(c) _____ 8

34 RCNY § 4-02(d)(2) _____ 8

N.Y.P.L. § 10 _____ 11

N.Y.P.L. § 205.30 _____ 16

N.Y.P.L. § 221.05 _____ 16

N.Y.P.L. § 240.20 (7) _____ 16

VTL § 1103(a) _____ 6

VTL § 1111(d)(1) _____ 16

VTL § 1122-a _____ 7

VTL § 1127 _____ 16

VTL § 1146(a) _____ 6, 7

VTL § 1146(b)(2) _____ 6, 7

VTL § 1231 _____ 8

VTL § 140 _____ 6

## RULES

FED. R. CIV. P. 56 _____ 1, 2

Fed. R. Civ. P. 56(a) _____ 2

Fed. R. Civ. P. 56(c) _____ 3

FED. R. CIV. P. 56(e) _____ 2

## REGULATIONS

NYPD Patrol Guide § 212-39 _____ 8, 9

1.  <u>Introduction</u>

On the afternoon of August 13, 2015, plaintiff Heins Rodriguez was riding his bicycle on 43rd Avenue in Queens. He was headed to meet his mother for a trip into Manhattan. Plaintiff's Local Civil Rule 56.1 Statement of Undisputed Facts dated May 10, 2019 ("Pl. 56.1"), ¶ 1.

As Mr. Rodriguez was traveling westbound on the roadway, an unmarked NYPD police car driven by defendant Zheng took him by surprise, forced him off the road and sent him careening to the pavement without a helmet, resulting in traumatic brain injury, myofascial pain syndrome and other serious impairments. *Id.* at ¶¶ 13-14, 22, 27-30. The collision with Mr. Rodriguez marked the third known instance in which defendant Zheng is alleged to have struck a civilian with his vehicle. *Id.* at ¶¶ 68-69.

After failing to call an ambulance for Mr. Rodriguez and instead taking him – clearly injured – to a police precinct, defendants Zheng and Chen forwarded false paperwork, in the form of affidavits and a criminal complaint, to Queens prosecutors. *Id.* at ¶¶ 39-40, 42-52. Zheng later misrepresented the circumstances surrounding the search of plaintiff's backpack during hearings in the criminal case and violated a criminal court judge's admonition by texting with his partner, defendant Chen, while still under oath. Plaintiff was offered an ACD at the next appearance.[1] *Id.* at ¶¶ 61-66.

If it should please the Court, plaintiff respectfully submits that upon review of the video evidence, documents and testimony, the Court should grant summary judgment to plaintiff on his excessive force, assault and evidence fabrication claims pursuant to Fed. R. Civ. P. 56. To the extent the Court determines that the excessive force and assault claims cannot be summarily

---

[1] For a complete recitation of the undisputed facts relevant to the instant motion, plaintiff respectfully refers the Court to his Local Civil Rule 56.1 statement dated May 10, 2019.

decided in plaintiff's favor, plaintiff respectfully submits that the undisputed evidence proves at least negligence, and that judgment in plaintiff's favor should enter on that claim.

2. The Summary Judgment Standard

Federal Rule of Civil Procedure 56 allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim are undisputed and that those facts entitle the party to the judgment sought. *Jackson v. Federal Express*, 766 F.3d 189, 194 (2d Cir. 2014). "The Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Mark v. Gawker Media LLC*, 13 CV 4347 (AJN), 2016 WL 1271064, *2 (S.D.N.Y. Mar. 29, 2016) (quoting Fed. R. Civ. P. 56(a)) (quotation marks omitted).

A fact is "material" within the meaning of FED. R. CIV. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting FED. R. CIV. P. 56(e)).

However,

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis in original). Notably, where authentic video footage depicts the disputed events, the Court should view the facts "in the light depicted by the videotape." *Id.* at 381.

3. Argument

a. Under Valid Alternative Theories of State Law Liability, Defendants Assaulted Plaintiff or, at the very least, Were Negligent in Conducting the Pursuit

As an initial matter, "controlling authority of the New York State Court of Appeals permits negligence claims against a police officer in the context of intentional conduct." *Jones v. Howard*, 15 CV 902 (GLS) (TWD), 2018 WL 3432713, *5 (N.D.N.Y. July 16, 2018) (collecting cases); *see Polanco v. City of New York*, 14 CV 7986 (NRB), 2018 WL 1804702, *10 (S.D.N.Y. Mar. 28, 2018) ("It is well settled that the alternative pleading principles of Rule 8(d) apply even at the summary judgment stage of litigation. Indeed, the Second Circuit has commented that alternative pleading 'is especially appropriate in civil rights cases.'") (citations omitted)

3

(collecting cases); *see also, e.g., Scott v. District of Columbia*, 101 F.3d 748, 753 (D.C. Cir. 1996) ("[Plaintiff] could properly plead alternative theories of liability, regardless of whether such theories were consistent with one another. Similarly, [plaintiff] could properly argue alternative claims to the jury."); *Bussolari v. City of Hartford*, 14 CV 149 (JAM), 2016 WL 4272419, *3 (D. Conn. Aug. 12, 2016) ("It is well established that a plaintiff may plead alternative theories of liability. The Second Circuit allows a party to proceed at summary judgment with inconsistency in claims, either in the statement of the facts or in the legal theories adopted.") (citations omitted).

Where, as here, a reasonable jury could conclude that any alleged contact (or undue proximity) between the defendant officers' unmarked vehicle and plaintiff's bicycle was either negligent *or* intentional "he is permitted to plead a negligence claim in the alternative." *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 89 n.14 (E.D.N.Y. 2012) (collecting cases); *Jones*, 2018 WL 3432713 at *5 (denying summary judgment where intentionality of conduct surrounding arrestee's injury by police officer was unsettled, noting that "courts have allowed such a negligence claim to be brought in the alternative") (collecting cases); *see also, e.g., Duartes v. Cty. of Nassau,* 07 CV 2929 (JS) (WDW), 2008 WL 11449235, *8 (E.D.N.Y. Sept. 30, 2008) (analyzing, and rejecting, defendants' argument that "intentional assault is legally incompatible with a negligence claim").

Of course, "[o]nce intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Hansel v. Sheridan*, 991 F.Supp. 69, 75-76 (N.D.N.Y. 1998). Accordingly, should the Court grant plaintiff's instant motion for partial summary judgment on his assault and excessive force claims, the negligence claim is properly extinguished. *Id.* If, on the other hand,

the Court denies plaintiff's motion for summary judgment on the assault and excessive force claims, plaintiff respectfully submits the merits of plaintiff's negligence claim for the same conduct should be considered; to the extent factual disputes are found to predominate, the question of intent should be put to a jury. *See Rafferty v. Arnot Ogden Memorial Hosp*, 140 A.D.2d 911, 912 (3rd Dept. 1988) ("…since there cannot be a verdict in plaintiff's favor upon both negligence and assault theories, and *Mazzaferro* would require the trial court to dismiss either the negligence or assault action at the *close of plaintiff's proof*, it seems clear that plaintiff should be required to separately state and number her causes of action in order to permit an orderly trial.") (emphasis added).

i.  <u>Defendants' Vehicle is Subject to the Rules of the Road</u>

The movement of defendant's vehicle and plaintiff's bicycle when traversing a roadway in the State of New York is governed by Title VII of New York's Vehicle and Traffic Law, titled "Rules of the Road." A driver who violates a specific standard of care set forth in New York's Vehicle and Traffic Law (VTL) is deemed negligent as a matter of law. *See Delgado v. Martinez Family Auto*, 113 A.D.3d 426, 427 (1st Dept. 2014); *Elliott v. City of New York*, 95 N.Y.2d 730, 734 (2001); *Gray v. Wackenhut Svcs., Inc.* 721 F. Supp. 2d 282, 290 (S.D.N.Y. 2010). Once plaintiff establishes prima facie a violation of traffic law, the burden shifts to the defendant to produce evidentiary proof showing that there was no violation of the traffic law, or sufficiently offering a reasonable explanation or excuse for the violation. *See Delgado*, 113 A.D.3d at 427.

Defendants' agency, the New York City Police Department, and its drivers, must comply with the provisions set forth in Title VII of the VTL, which, subject to certain exceptions not relevant to this case, are applicable to the drivers of all vehicles owned or operated by the City

of New York. VTL § 1103(a).

1. <u>VTL § 1146(a)</u>

"Notwithstanding the provisions of any other law to the contrary, every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist … upon any roadway and shall give warning by sounding the horn when necessary." VTL § 1146(a). A "roadway" is defined by VTL § 140 as "[t]hat portion of a highway improved, designed, marked, or ordinarily used for vehicular traffic, exclusive of the shoulder and slope."

As the driver, defendant Zheng was under a duty "to keep a reasonably vigilant lookout for bicyclists, to sound the vehicle's horn when a reasonably prudent person would do so in order to warn a bicyclist of danger, and to operate the vehicle with reasonable care to avoid colliding with anyone on the road." *Palma v. Sherman*, 55 A.D.3d 891, 891 (2d Dept. 2008). "It is settled that a driver is negligent where an accident occurs because [he] has failed to see that which through proper use of [his] senses [he] should have seen." *Gray v. Wackenhut Svcs., Inc.*, 721 F. Supp.2d at 290 (quoting *Duncalf v. Swamsington*, 05 CV 7020 (PAC), 2007 WL 2387968, *3 (S.D.N.Y. 2007) and citing *Bolta v. Lohan*, 242 A.D.2d 356, 356 (2d Dept. 1997)).

If a driver of a motor vehicle, while failing to exercise due care in violation of VTL § 1146(a), causes a bicyclist "physical injury," which is defined by the Penal Law to mean "impairment of physical condition or substantial pain,"[2] then "there shall be a rebuttable presumption that, as a result of such failure to exercise due care, such person operated the motor vehicle in a manner that caused such physical injury." VTL § 1146(b)(2).

Defendant Zheng breached his duty to take due care to avoid causing the collision with plaintiff. He failed to keep a reasonably vigilant lookout for bicyclists and failed to avoid boxing plaintiff in, even though he was admittedly aware of Mr. Rodriguez during the entirety of the

---

[2] Plaintiff's injuries exceed this requirement. Pl. 56.1, ¶¶ 41-43.

incident. Zheng Dep., Harvis Decl., Exhibit 2, p. 161, ln. 13-16 (Q: [Y]ou were looking at him? A: Yes. Q: [I]f the bike is next to you, is it fair to say you were looking to your right as he fell off? A: Yes.); s*ee Santana v. De Jesus*, 110 A.D.3d 561, 561-562 (1st Dept. 2013).

Defendant Zheng, while failing to exercise due care to avoid colliding with plaintiff as required by VTL § 1146(a), caused plaintiff "physical injury" and therefore, it is presumed that the manner in which defendant Zheng operated his vehicle caused plaintiff's physical injuries. *See* VTL § 1146(b)(2).

### 2.   VTL § 1122-a

VTL § 1122-a provides that the "operator of a vehicle overtaking, from behind, a bicycle proceeding on the same side of a roadway shall pass to the left of such bicycle at a safe distance until safely clear thereof."

Defendant Zheng violated VTL § 1122-a by failing to keep a safe distance when overtaking plaintiff from behind. Video Disc, Harvis Decl., Exhibit 26; Screenshot A, Harvis Decl., Exhibit 27. Such violation constitutes negligence *per se* and was a proximate cause of plaintiff's injuries. *See Delgado*, 113 A.D.3d at 427; *Dershowitz v. United States*, 12 CV 8634 (SN), 2015 WL 1573321, *24 (S.D.N.Y. Apr. 8, 2015) (reviewing video evidence in bicycle collision case, finding defendants "100% liable" and noting: "A violation of a standard of care imposed by the VTL constitutes negligence *per se.* If one party establishes *prima facie* a violation of the traffic law, the burden shifts to the other party to produce evidence showing that there was no violation or offering a sufficiently reasonable explanation or excuse for the violation.") (collecting cases) (citations omitted).

### 3.   New York City Traffic Rules and Regulations

A violation of the New York City Traffic Rules and Regulations (Chapter 4 of Title 34 of

the Rules of the City of New York (RCNY) constitutes some evidence of negligence. *See Elliot v. New York*, 95 N.Y.2d 730 (2001); *Rodriguez v. Cato*, 63 A.D.2d 922, 923 (1st Dept. 1978). The provisions of the RCNY apply to operators of vehicles owned by or used in the service of the City of New York. *See* 34 RCNY § 4-02(d)(2). RCNY Rules and Regulations pertain to, among other things, "[p]arking, standing, stopping and backing of vehicles," "[t]he prohibition or regulation of the use of any highway by particular vehicles or classes or types thereof or devices moved by human power," "[r]ight of way of vehicles," and "[r]egulation of the direction of the movement of traffic and the use of traffic lanes." VTL § 1642.

Pursuant to 34 RCNY § 4-02(c), "[n]o person shall operate a vehicle in a manner that will endanger any person." Defendant Zheng violated 34 RCNY § 4-02(c) by operating his vehicle in a manner which endangered plaintiff. The violation of this regulation constitutes some proof of defendant's negligence and was a proximate cause of the injuries.

### 4. NYPD Patrol Guide

NYPD Patrol Guide § 212-39 governs police pursuits of "vehicles," which the VTL defines to include bicycles. *See Palma*, 55 A.D.3d at 867 ("[A] person riding a bicycle on a roadway is entitled to all of the rights and bears all of the responsibilities of a driver of a motor vehicle.") (citing VTL § 1231 and collecting cases). Specifically, § 212-39 requires that, where "there is a likelihood that vehicle pursuit may be imminent," NYPD officers must "[d]etermine the necessity for commencing and continuing a vehicle pursuit by considering the…Nature of offense…Time of day…Weather condition…Location and population density…Capability of Department vehicle…Familiarity with area." § 212-39(2). Officers are required to, *inter alia*, "[n]otify radio dispatcher at start of pursuit," "maintain contact with radio dispatcher," and "[t]erminate the pursuit, if necessary*." Id.* at (3)-(8) and (10) (emphasis in original).

Critically, § 212-39 contains a list of prohibited tactics:

> *The following tactics are prohibited and <u>will not be</u> used in an attempt to stop a vehicle:*
>
> > *a. Ramming*
> >
> > *b. Placing moving Department vehicle in a position to be struck by the pursued vehicle*
> >
> > *c. Driving alongside the pursued vehicle*
> >
> > \*        \*        \*
>
> *Unmarked Department vehicles will limit pursuits.*

§ 212-39, pp. 3-4 (emphasis in original).

It is undisputed that defendant Zheng failed to follow the provisions of § 212-39. Pl. 56.1, ¶¶ 21-39. Moreover, such failures are appropriately included in the Court's analysis. *See, e.g., Cerbelli v. City of New York*, 99 CV 6846 (ARR), 2008 WL 4449634, *23 (E.D.N.Y. Oct. 1, 2008) ("To determine whether a defendant acted with reasonable care, the court may turn toward departmental guidelines, such as the Patrol Guide, to discern the relevant duty of care required from a police officer.") (citation omitted).

## ii. <u>Common-Law Standard of Care</u>

To establish that the defendant acted negligently under New York law, the plaintiff must demonstrate the following by a preponderance of the evidence: (1) the defendant owed him or her a duty of reasonable care; (2) a breach of that duty; and (3) a resulting injury proximately caused by the breach. *See Elmaliach v. Bank of China Ltd.*, 110 A.D.3d 192, 199 (1st Dept. 2013) (citing *Boltax v. Joy Day Camp*, 67 N.Y.2d 617 (1986)). The defendant has the burden of proving any negligence on the part of the plaintiff by a preponderance of the evidence. *See Kane v United States*, 189 F.Supp.2d 40, 52 (S.D.N.Y. 2002) (citing 1B New York Pattern Jury Instructions 2:275.1 (2000)).

Independent of any statutory or rule violation, defendant Zheng was under a common-law duty to use the same degree of care that a reasonably prudent person would have used under the same circumstances. He was required to keep a reasonably vigilant lookout for bicyclists, to sound the vehicle's horn when a reasonably prudent person would do so in order to warn a bicyclist of danger, and to operate the vehicle with reasonable care to avoid colliding with anyone on the road. *See* New York Pattern Jury Instructions 2:76A.

Defendant Zheng breached his common-law duty of care by failing to keep a reasonably vigilant lookout for bicyclists like plaintiff, to sound his horn to warn plaintiff of danger and to operate his vehicle with reasonable care to avoid a collision, and the evidence demonstrates that such breach was a proximate cause of plaintiff's injuries.

### iii.  Plaintiff was Not Negligent, and Defendant Zheng has No Excuse for Violating Traffic Rules

Plaintiff was "required to use reasonable care for ... [his] own safety, to keep a reasonably vigilant lookout for vehicles, and to avoid placing [himself] in a dangerous position" *Palma*, 55 A.D.3d at 891. Both plaintiff and defendant Zheng were required to obey the statutes governing traffic and each was entitled to assume the other would do so. *Id.*

There is no evidence that plaintiff was negligent in the operation of his bicycle, as the video surveillance from immediately prior to and during the incident reflects that he was riding as near as practicable to the right hand side of the roadway, maintained a reasonably vigilant lookout for vehicles, drove at a reasonably prudent speed, and avoided placing himself in an unnecessarily dangerous position. *Id.* To the extent he was in violation of any rule or law, such violation was not a proximate cause of the incident.

To the contrary, defendant Zheng (the driver) cannot demonstrate, or even articulate, an excuse for his violation of the VTL, Patrol Guide and other governing rules. *See* Zheng Dep.,

Harvis Decl., Exhibit 2, p. 156, ln. 12 – p. 157, ln. 6 ("Q: [I] think you said you had got one to two feet from his bike? A: Alongside of him, yes. Q: [W]hat was your plan at that point? A: Tell him to stop hopefully. Q: How would you tell him that? A: My partner can scream out a window if he has to.").

> iv.   The Surveillance Video and Other Evidence Proves Assault and Excessive Force Under the Fourth Amendment

To establish an assault claim under New York law, plaintiff must show "that defendant placed the plaintiff in reasonable fear of imminent harmful or offensive bodily contact." *5 Borough Pawn, LLC. v. Marti*, 753 F. Supp. 2d 186, 200–01 (S.D.N.Y. 2010). "Assault and battery claims, when alleged against a police officer, are evaluated like excessive force claims." *Brown v. City of New York*, 2013 WL 491926, *10 (S.D.N.Y. 2013); *see Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 n.9 (N.D.N.Y. 2017) ("If anything, state law assault and battery claims are more plaintiff friendly, because under New York law if an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery, regardless of whether the force would be deemed reasonable if applied during a lawful arrest.") (citations, quotation marks and brackets omitted).

The use of deadly force[3] is *per se* unreasonable "unless the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others." *Rasanen v. Doe*, 723 F.3d 325, 334 (2d Cir. 2013) (citation omitted); *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."). In the seminal case of *Graham v. Connor*, the Supreme Court explained:

---

[3] Section Ten of the New York Penal Law defines "deadly physical force" as "force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."

> Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons...against unreasonable...seizures" of the person…Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of "'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake.

490 U.S. 386, 394-396 (1989) (citation omitted).   "[A] Fourth Amendment seizure [occurs] ... when there is a governmental termination of freedom of movement through means intentionally applied." *Scott*, 550 U.S. 372, 381 (2007) (quoting *Brower v. County of Inyo,* 489 U.S. 593, 596- 597 (1989)); *see Brower*, 489 U.S. at 597 ("If ... the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.").

Here, the nature and quality of the intrusion on Mr. Rodriguez's Fourth Amendment interests was profound indeed.

While plaintiff was unwittingly biking down the street with traffic – unarmed and wearing headphones, but no helmet – officers who wrongfully suspected him of committing two non-criminal (and non-violent) violations pursued him in an unmarked police car traveling 30 miles per hour, overtook him and (in a matter of seconds) narrowed and ultimately eliminated his path of travel, resulting in a collision and serious injuries. Arrest Report, annexed to the Declaration of Gabriel P. Harvis dated May 10, 2019 ("Harvis Decl.") as Exhibit 15, pp. 1-2; Pl. 56.1, ¶¶ 14, 21-39; Video Disc, Harvis Decl., Exhibit 26; Video Screenshot D, Harvis Decl., Exhibit 30. Even defendant Zheng, the driver, admitted that he maneuvered the vehicle within twelve inches of plaintiff's bicycle, Pl. 56.1 at ¶ 21– but the video proves the distance is actually

closer (with the wheel turned toward plaintiff), strongly suggesting actual contact.[4] Video Disc, Harvis Decl., Exhibit 26; Video Screenshot A, Harvis Decl., Exhibit 27; *see Gaillard v. Commins*, 562 F. App'x 870, 875 (11th Cir. 2014) ("Viewing the evidence in the light most favorable to Plaintiff Gaillard, we conclude that a reasonable jury could find that (1) Officer Commins applied deadly force when he struck Gaillard with his police vehicle in order to stop and arrest him and (2) Gaillard was unarmed and did not pose a threat to a police officer or to a third party. A jury could therefore conclude that Officer Commins's action was objectively unreasonable under the circumstances."); *Davis v. Little*, 851 F.2d 605, 608 (2d Cir. 1988) ("[I]t is clear that Little's use of deadly force violated the Fourth Amendment…Little knew that Davis was a felon who had fled the custody of police, but he had no reason to believe that Davis posed a significant threat to his safety or to the safety of third parties. This, coupled with the failure to provide Davis with an adequate warning, did not justify the use of deadly force.").

As the Second Circuit has explained:

> While the Fourth Amendment test does take into account the officer's knowledge, e.g., whether an officer is aware that the suspect is armed or dangerous, or knows whether the alleged felony involved violence, its primary focus is on the attendant circumstances and the objective reasonableness of the officer's actions. There is no room for consideration of the officer's motives or intent under this standard, at least not in this case, and no requirement that an officer have acted with an improper motive in order to have acted unreasonably.

*Heath v. Henning*, 854 F.2d 6, 9 (2d Cir. 1988)

---

[4] Plaintiff respectfully submits that the record as a whole establishes that there was impact between the unmarked police car and plaintiff's bicycle. *See* Video Disc, Harvis Decl., Exhibit 26; Video Screenshot A, Harvis Decl., Exhibit A; Video Screenshot C, Harvis Decl., Exhibit 29; Video Screenshot D, Harvis Decl., Exhibit 30; Pl. 56.1, ¶ 31, 40; Zheng Dep., Harvis Decl., Exhibit 2, p. 162, ln. 14-24 (in which Zheng admits hearing plaintiff tell the desk sergeant that he had been struck by the police car); *see also* EMS Pre-Hospital Care Report, Harvis Decl., Exhibit 10.

Second, the countervailing government interests are minimal on these facts. It is undisputed that plaintiff was unarmed and posed no threat; indeed, the credible evidence strongly suggests that plaintiff had no knowledge he was even being pursued.[5] To the extent probable cause for a violation-level offense is relevant to the analysis, which plaintiff submits it is not, that too was minimal. Defendants admit that plaintiff never ran a red light and the evidence supports his position that 104th Street was under construction and closed to vehicular traffic, neutralizing the wrong-way allegation. *See* Photos, Harvis Decl., Exhibit 25; Pl. 56.1, ¶ 4. Thus, there was no articulable danger that might warrant *any* vehicular pursuit, let alone the reckless conduct initiated and undertaken by the officer defendants.

v.  The Surveillance Video and Other Evidence Also Establishes Excessive
    Force Under the Fourteenth Amendment

> The right not to be subject to excessive force, perhaps most commonly associated with the Fourth and Eighth Amendments, can also arise under the Fourteenth. This is because the touchstone of due process, which is protection of the individual against arbitrary action of government, bars the exercise of power without any reasonable justification in the service of a legitimate governmental objective.

*Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) (citations, brackets and internal quotation marks omitted). In *Edrei*, the Second Circuit held that "*Kingsley [v. Hendrickson*, 135 S.Ct. 2466 (2015)] provides the appropriate standard for all excessive force claims brought under the Fourteenth Amendment." *Id.* at 537; *see* Complaint, DE #1, ¶ 30 (pleading excessive force under Fourth and Fourteenth Amendments).

The non-exhaustive factors to apply in deciding this claim in the Second Circuit post-*Kingsley* are (1) the need for force (including the "severity of the security problem," "the threat

---

[5] During the prosecution, defendant Zheng (the driver) admitted at a hearing that plaintiff did not know why the officers had stopped him. *See* Hearing Tr., Harvis Decl., Exhibit 18, p. 11, ln. 4-6 ("He kept…asking me, why, why, why…").

perceived" and "whether the plaintiff was actively resisting"), (2) the relationship between the need and the degree of force used; and (3) the extent of injury. *Edrei,* 892 F.3d at 537 (quoting *Kingsley,* 135 S.Ct. at 2473 and *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Application of each factor favors plaintiff. First, there was, as explained above, no need for force. Plaintiff had not committed a crime, or even the non-criminal infractions of which he was suspected. There was no threat. Second, the degree of force used, which plaintiff respectfully submits was "deadly force" under these circumstances, is manifestly disproportionate to the peaceful infractions at issue. Third, the extent of injury is very significant, with plaintiff remaining symptomatic years later, including cognitive issues related to his head injury. *See* Pl. 56.1, ¶ 43.

Accordingly, plaintiff has established a Fourteenth Amendment excessive force claim.

b.  Defendants Fabricated Evidence

> In order to succeed on a claim for a denial of the right to a fair trial against a police officer based on an allegation that the officer falsified information, an arrestee must prove by a preponderance of the evidence that the officer created false information, the officer forwarded the false information to prosecutors, and the false information was likely to influence a jury's decision.

*Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279-80 (2d Cir. 2016) (extending the holding of *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) to cases in which the fabricated evidence consists of an officer's own observations) (citations omitted); *see Harris v. City of New York*, 222 F. Supp. 3d 341, 351 (S.D.N.Y. 2016) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.") (McMahon, C.J.) (citing *Zahrey v. Coffey,* 221 F.3d 342, 355 (2d Cir. 2000)).

15

In the arrest report prepared following plaintiff's arrest, plaintiff was charged with: (1) Resisting Arrest (PL § 205.30), a misdemeanor; (2) Unlawful Possession of Marijuana (PL § 221.05), a violation; (3) Disorderly Conduct (PL § 240.20 (7), creating a hazardous condition), a violation; (4) Passing a Steady Red Light (VTL § 1111(d)(1)), an infraction; and (5) Driving the Wrong Way on a One-Way Street (VTL § 1127), an infraction. *See* Arrest Report, Harvis Decl., Exhibit 15.

i. <u>Resisting Arrest</u>

In support of the Resisting Arrest charge, the highest charge brought against Mr. Rodriguez and the only misdemeanor offense alleged, defendant Zheng prepared the following documents:

- A criminal complaint, sworn under penalty of perjury stating that "…when he [Zheng] was placing handcuffs on [Mr. Rodriguez], the defendant [Rodriguez] flailed his arms and twisted his body in an attempt to avoid being handcuffed and placed under arrest." Pl. 56.1, ¶ 51.

- A Supporting Deposition, also sworn under penalty of perjury, indicating that Mr. Rodriguez had flailed his arms, held his arms against his body, struggled and refused to be handcuffed. Pl. 56.1, ¶ 44.

- An arrest report stating that "upon arrest, def [Rodriguez] did flare (sic) his arm refused to be handcuffed." Pl. 56.1, ¶ 46.

However, the surveillance video proves beyond cavil that plaintiff never flailed his arms or otherwise resisted arrest. *See* Video Disc, Harvis Decl., Exhibit 26, Camera 23 beginning at 04:51:29. Indeed, it shows Mr. Rodriguez, despite his injuries, immediately standing up and presenting his hands to the officers for cuffing as he staggers in semi-consciousness.[6] *Id.* This is more than sufficient to establish that the officers fabricated evidence. *See, e.g., Loftin v. City of*

---

[6] It bears noting that defendants Zheng and Chen maintain they only intended to issue Mr. Rodriguez a summons. Pl. 56.1, ¶ 20.

*New York*, 15 CV 5656 (MKB), 2017 WL 3614437, *8 (E.D.N.Y. Aug. 21, 2017) ("A plaintiff need only produce some evidence showing that the officer's statement or evidence is false or manipulated.") (collecting cases).

Given that Resisting Arrest was the most serious offense charged against Mr. Rodriguez (indeed, the only misdemeanor), it was *a fortiori* likely to influence both the prosecutor and jury. *See id.* ("Whether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case.") (collecting cases).

On this record, there is also no question that Zheng forwarded the false resisting arrest allegations to prosecutors. Indeed, the Supporting Deposition and Criminal Complaint containing his false allegations were filed with the criminal court in support of plaintiff's prosecution. *Id.* ("Proof that a police officer forwarded the fabricated evidence to a prosecutor can be satisfied by direct evidence that the officer gave the evidence to the prosecutor or by other evidence from which it can be inferred that the officer forwarded the fabricated evidence to a prosecutor.") (collecting cases).

The deprivation of liberty requirement is satisfied, as plaintiff was required to appear in criminal court on ten occasions – including mandatory attendance at pre-trial hearings, upon the threat of the issuance of an arrest warrant and of arrest. Court Action Sheet, Harvis Decl., Exhibit 34; Pl. 56.1, ¶ 60; *see, e.g., Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a ... deprivation of liberty.") (internal quotation marks omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)).

ii.  <u>The Red Light</u>

The defendants admittedly fabricated evidence in connection with plaintiff's alleged running of a red light. The allegation is contained, *inter alia*, in the arrest report, initial criminal complaint and the sworn disorderly conduct affidavit prepared by defendant Zheng. *See* Pl. 56.1, ¶¶ 46, 49, 58. However, defendants admit that there was no traffic control signal where defendants claim this infraction was committed. *Id.*, ¶ 51; *see* Construction Photos, Harvis Decl., Exhibit 25. Indeed, almost four months *after plaintiff's arraignment* on the false charge, defendants executed a second criminal complaint removing the allegation. *Compare* Harvis Decl., Exhibit 32 (criminal complaint dated August 13, 2015) *with* Harvis Decl., Exhibit 33 (criminal complaint dated December 7, 2015).

iii.  <u>Disorderly Conduct</u>

Defendant Zheng executed a sworn Supporting Deposition accusing plaintiff of committing disorderly conduct. According to defendant Zheng, he "observed" Mr. Rodriguez "obstructing vehicular or pedestrian traffic" by "going wrong way on one way st. in mid lane and pass steady red light." This allegation is doubly false. First, defendant Zheng admitted at his deposition that he was inside the police vehicle issuing a summons at the time plaintiff allegedly crossed the intersection. Pl. 56.1, ¶ 11, 51; *but see* Criminal Complaints, Harvis Decl., Exhibits 32 and 33. Second, as discussed, there was no red light. *Id.* at ¶ 51. Additionally, defendant Zheng swore that plaintiff's conduct caused public inconvenience because a "crowd gathered in response to the [Mr. Rodriguez's] actions" and "blocked traffic cause traffic jam (sic)." *Id.* at ¶ 49. Review of the video evidence, however, reveals that plaintiff did not cause a crowd to gather or any sort of traffic jam.

4.  Conclusion

For the foregoing reasons, plaintiff respectfully requests that the Court grant partial summary judgment to plaintiff on his claims of excessive force, assault and fabrication of evidence, and for such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 10, 2019

ELEFTERAKIS, ELEFTERAKIS & PANEK

_____
Gabriel P. Harvis
Baree N. Fett
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116
gharvis@eeplaw.com

*Attorneys for plaintiff*

To:    All Counsel (by e-mail)