CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS : PART  AP1
------------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK      :
                                         :
                                         :
        -against-                        :  Docket No:
                                         :  2015QN040424
HEINS RODRIGUEZ                          :  Calendar Call
                        Defendant.       :
------------------------------------------x
                125-01 Queens Boulevard
                Kew Gardens, New York 11415
                December 10, 2015


B E F O R E:   HONORABLE GIA MORRIS
                   CRIMINAL COURT JUDGE


A P P E A R A N C E S:

         FOR THE PEOPLE:
         RICHARD A. BROWN, ESQ.
         District Attorney of Queens County
               125-01 Queens Boulevard
               Kew Gardens, New York 11415
         BY:  KEVIN FOGARTY, ESQ.
              ERIC MOUCHETTE, ESQ.
              SHLOMIT METZ, ESQ.
              Assistant District Attorneys


         FOR THE DEFENDANT:
         LEGAL AID SOCIETY
               120-46 Queens Boulevard
               Kew Gardens, New York 11415
         BY:  ANDRE WATSON, ESQ.


              DANIELLA CHAMBERLAIN - SENIOR COURT REPORTER

-PROCEEDINGS-

1          COURT OFFICER:  Calendar 46, Heins Rodriguez.

2          MR. WATSON:  The Legal Aid Society by Andre

3    Watson, W-A-T-S-O-N, on behalf of Mr. Rodriguez.

4          THE COURT:  People, is your witness here?

5          MR. FOGARTY:  I believe he is, Judge, I just told

6    Mr. Mouchette to come on over.

7          THE COURT:  Is your client taking the ACD?

8          MR. WATSON:  No.

9          THE COURT:  So, the DA is on his way over with the

10   officer?

11         MR. FOGARTY:  Yes.  I told him to come on over.

12         THE COURT:  Any issues?

13         MR. WATSON:  There's hearing issues.

14         THE COURT:  What do you mean by hearing issues?

15         MR. WATSON:  There's Rosario issues.

16         THE COURT:  That's what I'm asking; what is the

17   Rosario issue?

18         MR. WATSON:  So, there's no sprints, no 911s,

19   no -- I don't believe there's a compliant report.  My

20   client was taken to the hospital.  There should be an

21   ambulance report or an EMS report.

22         THE COURT:  An aided report?

23         MR. WATSON:  Yes.

24         THE COURT:  And you don't have the complaint

25   report?

1    MR. WATSON:  No.

2    THE COURT:  You don't have the 61?

3    MR. WATSON:  I have the arrest report; I have the

4    complaint report.

5    MR. FOGARTY:  Well, Mr. Mouchette is on his way

6    over.

7    THE COURT:  It's a DAT.  Maybe that's why you

8    don't get a complaint report.

9    MR. WATSON:  I don't believe it was a DAT.

10    THE COURT:  It was a DAT.  It says DAT

11    investigation was signed.  They checked off DAT

12    investigation on your paperwork.

13    Second call.

14    MR. WATSON:  Okay.

15    (Case set aside; later recalled.)

16    COURT OFFICER:  Calendar 46, Heins Rodriguez.

17    THE COURT:  Appearances?

18    MR. MOUCHETTE:  Your Honor, Eric Mouchette for The

19    People.

20    THE COURT:  How do you spell your last name?

21    MR. MOUCHETTE:  M-O-U-C-H-E-T-T-E.

22    And for the record, The People have provided a

23    copy of the officer's memo book, the marijuana field test,

24    as well as the arrest report and the DAT investigation

25    sheet.

-PROCEEDINGS-

1   THE COURT:  So, was this a desk appearance ticket
2   or no?

3   MR. MOUCHETTE:  No, Your Honor.

4   THE COURT:  But they filled the paperwork out.

5   Was there a 911 on this?

6   MR. MOUCHETTE:  Your Honor, I ordered the 911s.  I
7   haven't found out whether or not they exist yet.

8   THE COURT:  I don't think you need them for the
9   hearing.

10  MR. MOUCHETTE:  I don't believe I do either.

11  THE COURT:  Mr. Watson was also looking for an
12  aided report from your witness.

13  MR. MOUCHETTE:  I do not have the aided report.

14  THE COURT:  Was there an aided report?

15  MR. MOUCHETTE:  I can find out from the officer,
16  but there was none in the paperwork that I have.

17  MR. WATSON:  There was, Your Honor, he was taken
18  to the hospital.

19  THE COURT:  That doesn't mean this officer has an
20  aided report, and it's only this officer that matters.

21  Your officer brought all of his paperwork with
22  him?

23  MR. MOUCHETTE:  Yes, he did.

24  THE COURT:  And you went through it with him?

25  MR. MOUCHETTE:  I did, and I didn't see the aided

-PROCEEDINGS-

1    report.

2              THE COURT:  For the purposes of the hearing, I

3    don't know that you need that.

4              MR. WATSON:  Okay.  Additionally, Your Honor, I

5    just found out that there's another video of this incident.

6    I believe it is in Mr. Mouchette's possession.

7              MR. MOUCHETTE:  Your Honor, with respect to the

8    video --

9              THE COURT:  What do you mean by video?

10             MR. MOUCHETTE:  Your Honor, there was surveillance

11   video of a portion of the incident.

12             I don't think the videos are a complete story as

13   to what happened, and I think we could move forward without

14   the videos.

15             THE COURT:  Is there a reason you can't turn them

16   over?

17             MR. MOUCHETTE:  I received the disk yesterday

18   afternoon, and after receiving a disk from Mr. Watson, I

19   would be more than happen to turn them over to him,

20   Your Honor.

21             MR. WATSON:  I think it's necessary for the

22   hearing.

23             THE COURT:  I don't think it's necessary.

24             Why don't you have one of your colleagues make a

25   copy while we're doing the hearing?

1    And if it changes your position, we could reopen

2 the hearing.  He'll give you the video after the hearing,

3 we'll leave the witness here and you could look at it and

4 tell me if you need to ask any questions related to it.

5    MR. WATSON:  I do have one video; however, I mean,

6 he is charged with Resisting Arrest.

7    THE COURT:  He's charged with a number of things.

8    MR. WATSON:  Yeah, yeah, and also possession of

9 marijuana.

10    I do think the video shows that, the stop and the

11 search.

12    THE COURT:  Is that true?

13    MR. MOUCHETTE:  Your Honor, the video does not

14 show --

15    THE COURT:  Who took the video?

16    MR. MOUCHETTE:  The video is a surveillance video

17 that --

18    THE COURT:  Do you have it with you right now?

19    MR. MOUCHETTE:  I don't have it with me right now.

20    THE COURT:  Why?

21    MR. MOUCHETTE:  It's in my office.

22    THE COURT:  But why didn't you bring it with you?

23    MR. MOUCHETTE:  I didn't think the video is

24 necessary for this hearing.

25    With respect to the video, as you know, he was

-PROCEEDINGS-

1    arrested for a number of reasons, including riding his

2    bicycle, riding down the one-way street.

3                THE COURT:  I know, but without that, how does

4    Mr. Watson know that?

5                MR. MOUCHETTE:  He has a copy of a video.

6                THE COURT:  He's saying this is a different video.

7                Who took the video?

8                MR. MOUCHETTE:  Honestly, I do not know.

9                THE COURT:  Well, how did you get it?

10                MR. MOUCHETTE:  There was a CCRB investigation

11    conducted in connection with this.  The CCRB --

12                THE COURT:  I don't need to know what they found,

13    but do you have a copy of the CCRB file?

14                MR. WATSON:  No, no, I have a copy of their

15    summary.  Apparently, there's testimony and video.

16                THE COURT:  From this witness?

17                MR. MOUCHETTE:  I believe so, yes.

18                THE COURT:  Do you have that in your possession?

19                MR. MOUCHETTE:  I received it yesterday afternoon.

20                THE COURT:  You have to turn that over before we

21    do this hearing.

22                MR. MOUCHETTE:  I absolutely understand that.

23                THE COURT:  If you have it now, you need to do it

24    before your witness testifies.  That's Rosario.

25                Have you given it to him yet?

-PROCEEDINGS-

1    MR. MOUCHETTE:  I asked him for a disk for me to

2  make a copy.  We haven't had time to do it.

3    THE COURT:  You can't announce ready until you

4  turn that over.

5    MR. MOUCHETTE:  The thing is, we did mention this

6  on the last date.

7    THE COURT:  It was not mentioned yesterday.

8    MR. MOUCHETTE:  I'm sorry, Mr. Watson did mention

9  there was CCRB testimony.

10    THE COURT:  Not yesterday, not yesterday.

11    MR. MOUCHETTE:  Not yesterday, the day before.

12    THE COURT:  Okay.  Well, if you have that before,

13  you can proceed to hearings on this.  You need to turn that

14  over.

15    MR. MOUCHETTE:  I absolutely will turn it over,

16  Your Honor.

17    THE COURT:  You didn't it bring with you.

18    MR. MOUCHETTE:  Because I didn't receive a

19  blank --

20    THE COURT:  You are legally required to do turn it

21  over.  It doesn't matter whether Mr. Watson gives you a

22  tape or not.  Before you go forward on a hearing and you

23  have testimony, you have to turn it over.  You're legally

24  required to do that.  It's Rosario.  Before the witness

25  takes the stand, if he testified relating to this incident,

1    it needs to be disclosed, so before we could even do this

2    hearing, Mr. Watson needs that.

3              So, we'll second call this case.

4              You could go up to AP6.

5              Don't go far, Mr. Watson.  We're not on Central

6    Standard Time; we're still doing Eastern Standard Time.

7              (Case set aside; later recalled.)

8              COURT OFFICER:  Recalling calendar 46, Heins

9    Rodriguez.

10             THE COURT:  So, we had a bench conference in which

11   I learned that the Civilian Compliant Review Board has

12   turned over some records but not all the records, and the

13   records that we are missing are records pertaining to the

14   testimony the police officer took with respect to the facts

15   and circumstances of this case; is that everybody's

16   understanding?

17             MR. MOUCHETTE:  Yes.

18             MR. WATSON:  Yes, Your Honor.

19             MR. MOUCHETTE:  Yes, to the extent that I'm not

20   sure if they actually exist in audio file.  They told me

21   they did, in fact, send me everything they have, and it did

22   not include an actual transcript that the officer provided,

23   as well as any audio of any testimony.

24             THE COURT:  But he did tell you he testified in

25   this case, correct?

1    MR. MOUCHETTE:  That's my understanding.  He was

2    interviewed.

3    THE COURT:  And they have indicated they won't

4    turn over certain things?

5    MR. MOUCHETTE:  My understanding is that they told

6    me they don't do formal, you know, hearings.  They do

7    interviews.  And their position is that any documents that

8    they provide The Government are non-discoverable in that

9    proceeding.

10   THE COURT:  They think they could give it to you

11   and you not be able to turn it over?

12   MR. MOUCHETTE:  That's correct.

13   THE COURT:  Has Jim Leander weighed in on this?

14   MR. MOUCHETTE:  No, he has not.

15   But I did receive a letter from Assistant Deputy

16   Executive Director of Investigations, Lindsay Fluke (ph),

17   who requested an opportunity to come and argue before The

18   Court to the extent that Defense Counsel requests access to

19   the paper documents they provided.

20   THE COURT:  So, with respect to this, I want the

21   District Attorney's Office to coordinate with Jim Leander's

22   group.  He's the Chief of Public Integrity.  I've known him

23   for many years because of my prior job history, and he may

24   be able to resolve some of the issues.

25   But they absolutely have to turn over anything

-PROCEEDINGS-

1  related to testimony taken by an officer relating to this

2  criminal case.  They can't give it to you and tell you that

3  you can't tun it over.

4           MS. METZ:  No, no, it's just that we have to

5  follow the procedures.  We will comply.  We just have to

6  jump through additional hoops --

7           THE COURT:  You have to jump through those hoops

8  because I can't do a hearing when Mr. Watson doesn't have

9  testimony on the exact issue from a prior proceeding.

10          MS. METZ:  Understood.

11          MR. WATSON:  Thank you.

12          THE COURT:  We'll try to coordinate it.

13          Mr. Watson, I'll sign a subpoena, but just make it

14  very specific so that it's relating to any records that

15  they have pertaining to testimony about this incident by

16  this officer.

17          MR. WATSON:  Okay.

18          THE COURT:  I'm not asking if they wrote

19  handwritten notes, if they have an audio, but if they took

20  notes, I think that is discoverable since they are a

21  government entity.  We may end up having them come here,

22  but we'll deal with that when the time comes.

23          So, how long does this usually take?

24          Ms. Metz, do you have any idea?

25          MS. METZ:  I don't.

1    MR. MOUCHETTE:  I don't know, Your Honor, but I

2    could call them and ask.

3    THE COURT:  I would call Jim Leander because he

4    probably deals with them on a regular basis and he might

5    have a relationship with them and he might be able to help

6    negotiate some of these issues.

7    So, the case -- your client was arrested in

8    August, so it's not terribly old.

9    Do you want to do a December date or a January

10    date?

11    Did your client testify?

12    MR. WATSON:  Yes, he did.

13    THE COURT:  You know, if he testified at trial,

14    you're going to have to get those records.

15    MR. WATSON:  They have it.

16    THE COURT:  Those they'll turn over?

17    MR. MOUCHETTE:  I just have the audio of his --

18    THE COURT:  But not with respect to the officer.

19    MR. MOUCHETTE:  With respect to his -- he refused

20    to provide any statements.

21    THE COURT:  But if they're willing to turn over

22    his, they should turn over the officer's as well.

23    Do you want a December date, Mr. Watson, or a

24    January date?

25    MR. WATSON:  We could do early January,

1    January 5th.

2              THE COURT:  I know I'm not going to be in court

3    that day, so let's do that Friday, January 8th.

4              MR. MOUCHETTE:  Your Honor, I won't be here on the

5    8th.  I'm going to be on vacation.  I expect to be back by

6    the 20th.

7              THE COURT:  All right.  How's January 25th, 26th

8    or 27th?

9              MR. WATSON:  We could do late December if you

10   want.

11             THE COURT:  Do you want December 22nd or December

12   23rd?

13             We could put it on even for control to see where

14   we are so we don't go too far without knowing what's going

15   on; is that okay?

16             MR. WATSON:  Yes.

17             THE COURT:  December 22nd or 23rd?

18             MR. WATSON:  The 22nd.

19             (Continued on following page.)

20

21

22

23

24

25

-PROCEEDINGS-

1          THE COURT: AP1, December 22nd.

2          We'll put it on for the CCRB records and see where

3     we are and see if a subpoena is needed or what they're

4     going to do with that.

5          AP1, December 22nd.

6          Parole is continued.

7          *************************

8          This is certified to be a true and accurate

9     transcript of the stenographic notes.

10

11

12

13          *[signature: Daniella Chamberlain]*

14          DANIELLA CHAMBERLAIN

15          Senior Court Reporter

16

17

18

19

20

21

22

23

24

25

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS:          PART AP1
--------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK,   :
                                           DOCKET NO.
               -against
                                       :   2015QN040424
HEINS RODRIGUEZ,
                                       :
               Defendant.
--------------------------------------X calendar call

                    125-01 Queens Boulevard
                    Kew Gardens, New York 11415

                    December 22, 2015


B E F O R E:

          THE HONORABLE GIA MORRIS,
                              Judge.



A P P E A R A N C E S:

          OFFICE OF RICHARD A. BROWN
          DISTRICT ATTORNEY - QUEENS COUNTY
          BY:  SHLOMIT METZ, Esq.
          Assistant District Attorney


          THE LEGAL AID SOCIETY
               Attorneys for Defendant
               120-46 Queens Boulevard
               Kew Gardens, New York 11415
          BY:  ANDRE WATSON, Esq.


                              FONDA NASON
                    OFFICIAL COURT REPORTER

1          THE COURT OFFICER:  AP1, Calendar Number

2     37, Heins Rodriguez.

3          MR. WATSON:  Andre Watson, Legal Aid

4     Society.

5          THE COURT:  This was sort of put on for

6     CCRB to turn over the records.  My understanding

7     is they have provided an audio or they are

8     providing to Mr. Watson an audio of the

9     officer's testimony, which is exactly what we

10    needed that was missing.

11         MS. METZ:  I'm handing over a disk right

12    now.

13         MR. WATSON:  It's my understanding that

14    there is actual --

15         THE COURT:  No.  You are entitled to audio.

16    That's what you get.  That's all I'm giving you.

17         MR. WATSON:  So I think there is a PDF of

18    the actual statements from the officer.

19         THE COURT:  No, they told me they had

20    audio.  That's what they are turning over.

21    Otherwise I'm going to have to sign a protective

22    order.  The actual audio of the testimony that

23    he provided at the CCRB, is that what you are

24    getting?  When can we do the hearing?  That's

25    what I was told they had.

1       MR. WATSON:  If I may, it's my

2   understanding that the District Attorney told me

3   that he is in possession of hundreds of pages of

4   material given to him by the CCRB.

5       THE COURT:  Not relating to this officer's

6   testimony.  They told me they have -- the issue

7   was the audio transcript that needed to be

8   provided.  That's what you are entitled to.  If

9   they have something in their custody they will

10  have to tell us that.

11      MR. WATSON:  So DA Mouchette told me he has

12  documents from CCRB.

13      THE COURT:  But not relating to the

14  officer's testimony.  They turn over testimony,

15  that's what you were entitled to.  That's what

16  you are getting.  I don't want to spend time

17  talking about it.  If you think you are missing

18  something, you can file a motion.  My issue is

19  they didn't give you the audio transcript of the

20  testimony that the officer gave for the CCRB.

21  They have now given that.

22      MR. WATSON:  I would ask for en camera

23  inspection.

24      THE COURT:  They told me at side bar that

25  the only thing they had and Brian from CCRB,

1      Krist, told me they were providing an audio

2      transcript.  They were going to give me a motion

3      for protective order for any other documents.  I

4      gave it back to him because that's all that he

5      turned over.

6          MR. WATSON:  It's my understanding that the

7      assistant DA has actual documents in his

8      possession that pertain.

9          THE COURT:  That's not what I was told.

10     You can file a motion if you believe there is

11     something missing that I don't have.  That's not

12     what I was told.

13         MS. METZ:  Your Honor, I just spoke to Mr.

14     Mouchette.  My understanding is that any of the

15     documents that he has are actually my

16     understanding just work product or the same work

17     product of an individual sitting there listening

18     to the audio.  It's not something that he is

19     entitled to.

20         THE COURT:  Doesn't sound like it.  You

21     have the audio.  Listen to the audio.  Make sure

22     it's the officer's testimony.

23         MS. METZ:  They made a motion to not turn

24     anything else over.

25         THE COURT:  Mapp, Dunaway.  What date?

1          MS. METZ:  Handing up copy of Mr. Krist's

2     motion to the court.

3          THE COURT:  I gave it back to him because

4     they provided what I needed them to provide.

5          MR. WATSON:  If I wanted any additional

6     discovery I can make a motion.

7          THE COURT:  You are not entitled to

8     anything else.  I don't know what you want.

9          MR. WATSON:  Potentially that could be

10    Brady material.  We don't know what's in it.

11         THE COURT:  You have the audio transcript.

12    It can't be Brady, because you have an actual

13    audio recording of the officer's testimony

14    testifying before the CCRB.  That's what you are

15    entitled to.

16         MR. WATSON:  They did a full fledged

17    investigation into the incident that happened

18    with my client.  They interviewed witnesses.

19         THE COURT:  Unless those witnesses are

20    testifying, you are not entitled.

21         MR. WATSON:  But it could be potential

22    Brady.

23         THE COURT:  Anything could be potential

24    Brady.  If there is a witness that you want to

25    subpoena for the trial, that's all you have to

1   do, but you are not entitled to that.  That's

2   not a witness that is testifying.  If the

3   officer was testifying, the reason why we didn't

4   do the hearing on the last date was because the

5   officer testified before the CCRB and the DA had

6   not turned over because they didn't have a copy

7   of the audio transcript.  Now that I have seen

8   them they handed that to you.  I was told by Mr.

9   Krist that's what they gave -- you have --

10  that's what you are entitled to.

11          MS. METZ:  21 or 22 of January.  Otherwise

12  the 10, 11, 15, 16 of February.

13          MR. WATSON:  11.

14          THE COURT:  I don't want to do the 11.  I

15  think it's going to be a combined part week

16  because it's on the heels of a holiday week.

17          MS. METZ:  10 or 16?

18          THE COURT:  Either one of those.

19          MR. WATSON:  February 16th.

20

21

22

23

24

25

1        THE COURT:  AP1, February 16th, for the

2   hearings.

3   _____

4   I hereby certify the foregoing to be a true and

5   accurate transcript of the proceeding.

6                    _____

7                    Fonda Nason,
                     Official Court Reporter
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P434

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF QUEENS : PART JP1
-----------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK     :
                                        :
                                        :
        -against-                       :  Docket No:
                                        :  2015QN040424
HEINS RODRIGUEZ                         :  Hearing
                        Defendant.      :
-----------------------------------------x
                125-01 Queens Boulevard
                Kew Gardens, New York 11415
                March 23, 2016


B E F O R E:    HONORABLE STEPHANIE ZARO
                CRIMINAL COURT JUDGE


A P P E A R A N C E S:

            FOR THE PEOPLE:
            RICHARD A. BROWN, ESQ.
            District Attorney of Queens County
                125-01 Queens Boulevard
                Kew Gardens, New York 11415
            BY:  ERIC MOUCHETTE, ESQ.
                 SHLOMIT METZ, ESQ.
                 Assistant District Attorneys


            FOR THE DEFENDANT:
            LEGAL AID SOCIETY
                120-46 Queens Boulevard
                Kew Gardens, New York 11415
            BY:  ANDRE WATSON, ESQ.


        DANIELLA CHAMBERLAIN - SENIOR COURT REPORTER

1    COURT OFFICER:  Calender number six, Heins

2  Rodriguez.

3    MR. WATSON:  The Legal Aid Society by Andre

4  Watson, W-A-T-S-O-N, on behalf of Mr. Rodriguez.

5    Good afternoon.

6    THE COURT:  Good afternoon.

7    MR. MOUCHETTE:  Good afternoon, Your Honor.

8    Eric Mouchette on behalf of The People.

9    THE COURT:  Good afternoon.

10    What kind of a hearing is this?

11    MR. MOUCHETTE:  Your Honor, it's a Mapp/Dunaway

12  hearing.

13    THE COURT:  One witness?

14    MR. MOUCHETTE:  Yes, Your Honor, only one witness.

15    THE COURT:  Okay.  No way to resolve this with an

16  ACD and a 30-day sealing?

17    MR. MOUCHETTE:  Your Honor, the defendant has

18  refused the prior offer of an ACD.

19    The current offer is now a 240.20.

20    THE COURT:  I got it.

21    MR. MOUCHETTE:  Also, for the record, The People

22  served Defense Counsel with an arrest report, DAT

23  investigation sheet, the officer's memo book, property

24  clerk invoices, as well as a radio run and sprint report.

25    THE COURT:  Okay.

1          MR. WATSON:  I received all of those.  I just

2     received a copy of the radio run and sprint report.  I

3     could review that over lunch.

4          THE COURT:  We're probably not going to get done

5     anyway.

6          MR. WATSON:  Okay.

7          THE COURT:  Call your first witness.

8          MR. MOUCHETTE:  Your Honor, The People call

9     Officer Zuopeng Zheng.

10         COURT OFFICER:  Witness entering.

11         COURT OFFICER:  Face me and raise your right hand,

12     please.

13         Do you swear to tell the truth, the whole truth

14     and nothing but the truth so help you God?

15         THE WITNESS:  Yes, I do.

16         COURT OFFICER:  In a loud, clear voice, please

17     state your name, shield and command.

18         THE WITNESS:  Police officer Zheng, 110th

19     Precinct, Shield 25461.

20         THE COURT:  That's what I like, a loud voice.

21     That's great.

22         THE WITNESS:  Thank you.

23         THE COURT:  Very good.

24         You my inquire.

25     DIRECT EXAMINATION

1    BY MR. MOUCHETTE:

2        Q    Good morning, Officer.

3        A    Good morning.

4        Q    Who is your employer?

5        A    New York City Police Department.

6        Q    What's your rank?

7        A    Police officer.

8        Q    What's your current assignment?

9        A    I'm the Highway Safety officer of the 110th Precinct.

10            THE COURT:  Which precinct?

11            THE WITNESS:  The 110th Precinct.

12        Q    How long have you been at that assignment?

13        A    I've been doing Highway Safety for four years now.

14        Q    How long have you been a police officer?

15        A    Almost ten years.

16        Q    About how many arrests have you made?

17        A    Over 200.

18        Q    Okay.  Now, directing your attention to August 13,

19    2015, were you working that day?

20        A    Yes, I was.

21        Q    Okay.  What tour were you working?

22        A    I was working between 1100 hours to 1935, 7:35 at

23    night.

24        Q    Okay.  Were you working alone or with a partner?

25        A    With a partner.

-P.O. ZHENG - PEOPLE - DIRECT-

1    Q    In plain clothes or uniform?

2    A    Uniform.

3    Q    Foot patrol or in a vehicle?

4    A    In an unmarked vehicle.

5        THE COURT:  Unmarked you said?

6        THE WITNESS:  Unmarked vehicle.

7    Q    Were you assigned to any specific tasks that day?

8    A    My sole purpose that day was bicycle enforcement, any

9 bicyclists going against the wrong way, any moving violation

10 that day.

11    Q    Did you make an arrest that day?

12    A    Yes, I had.

13    Q    Who did you arrest?

14    A    Mr. Heins Rodriguez.

15    Q    Do you see that person in the courtroom today?

16    A    Yes.

17    Q    Could you describe an article of clothing that person

18 is wearing?

19    A    The blue jacket, sitting right over there (indicating).

20        THE COURT:  Indicating the defendant.

21    Q    Directing your attention to approximately 4:45 p.m.,

22 were you in the vicinity of 104th Street and 43rd Avenue?

23    A    Yes, I was.

24    Q    Okay.  Is that location in Queens County?

25    A    Yes.

1                THE COURT:  You said 43rd Avenue?

2                MR. MOUCHETTE:  43rd Avenue, Your Honor.

3                THE COURT:  Thank you.

4     Q     What brought you to that location?

5     A     I had one person stopped at the location for running a

6  stop sign southbound on 104th Street and just passed the

7  intersection of 42nd Avenue.

8     Q     Could you describe the area?

9     A     104th Street is a one-way street going southbound only.

10  Coming to the intersection of 43rd Avenue, it is -- the traffic

11  light is at the location.  43rd Avenue is going eastbound to

12  westbound.  I was at the northeast corner of the location and

13  there's four one-way street signs affixed to the corner.  The

14  signs have black letters, white background.  They say:  One-Way

15  street.  They prevent traffic going northbound on 104th Street

16  and 43rd Avenue.

17     Q     Which direction were you facing?

18     A     I was facing southbound at the time.

19     Q     At around 4:45 p.m. what did you observe?

20     A     While I was writing the summons, my partner jumped out

21  of the car.  I looked up and I see Mr. Heins Rodriguez traveling

22  northbound on 104th Street, pass the intersection of 43rd

23  Avenue.  Also, at this point, I observed the traffic light where

24  I was facing is a steady red phase at the time.  So, at that

25  point, my partner tried to stop Mr. Rodriguez.

1    Q    Just to clarify, was he going against traffic or with

2  traffic?

3    A    Against traffic.

4    Q    Okay.  Now, the stoplight, what color was the stoplight

5  that was facing you?  The side that was facing you, what color

6  was it?

7    A    It was red at that time.

8    Q    What happened after your partner had seen the

9  defendant?

10    A    He was approximately, like, I'd say, a car length away,

11  and he passed the intersection of 43rd Avenue.  At this time he

12  was southbound on 104th Street --

13          THE COURT:  So, you get credit for speaking loudly

14      but demerits for speaking too fast.

15          THE WITNESS:  I'm sorry.  I'm in Traffic Court too

16      much.  I'm sorry.

17          He was on the south side on 43rd Avenue on 104th

18      Street at this time.

19          THE COURT:  He, being who?  Your partner or the

20      defendant?

21          THE WITNESS:  Mr. Rodriguez.

22          THE COURT:  The defendant, all right.

23          THE WITNESS:  Right.

24          He passed the intersection at approximately a car,

25      two-car lengths away, and my partner tried to stop him at

1      this time.

2      Q      Did you have authority to arrest him at that point?

3      A      Yes.

4      Q      For what?

5      A      For going the wrong way down a one-way street.  It was

6  a moving violation.

7      Q      So, after your partner signalled to him, you said he

8  made a right?  He made a U-turn and made a right?

9      A      No, no, no, he made a U-turn.

10             MR. WATSON:  Objection.

11             THE COURT:  I'll allow it.

12      A      He made a U-turn at the location and made a right turn

13  onto 43rd Avenue, which is westbound on 43rd.

14      Q      Could you tell me what happened next?

15      A      At that point my partner jumped in the car.  We started

16  pursuing the bicyclist, which is Mr. Rodriguez.  We chased him

17  approximately a thousand feet away.

18             THE COURT:  He was on a bicycle?

19             THE WITNESS:  He was on a bicycle.

20             THE COURT:  Okay.

21             THE WITNESS:  We got to approximately the

22      intersection of 102nd Street, still on 43rd Avenue.  He hit

23      a parked car at this location, and we placed him under

24      arrest at that location.

25      Q      Okay.  Now, taking you back to when he initially

-P.O. ZHENG - PEOPLE - DIRECT-

1    crossed the intersection, you said that the light facing you was

2    red. Now, the defendant passed that light. When the defendant

3    crossed the intersection, what color was the light when it was

4    facing you?

5        A     For me, at the time, it was red.

6        Q     Did you officially report anything about the defendant

7    passing that light?

8        A     I did charge him for passing that light initially.

9        Q     Why did you report that?

10       A     While I was facing the light, the light was steady red.

11   My assumption at the time was he just passed a red light going

12   against traffic.

13       Q     Was that true?

14       A     Unfortunately, no.

15       Q     When did you realize it wasn't true?

16       A     Actually, the very next day when I was going to work --

17             MR. WATSON: Objection.

18             THE COURT: I'll allow it.

19             You could answer.

20       A     The very next day, I was going to work, I did realize

21   when I stopped that it was a three-phase light, not a four-phase

22   light. There's no light facing southbound. There's no

23   northbound traffic allowed.

24       Q     Did you intend to report false information?

25       A     No.

1  Q  Why did you report it?

2  A  Initially, when I had made the stop, it was the light

3  for me.  It was red at the time.

4  Q  Was it a mistake?

5  A  Yes.

6  Q  Did you ever correct that?

7  A  Yes, I did.

8  Q  How did you correct that?

9  A  I spoke to the ADA the next day and we did another

10  affidavit and I signed another affidavit for it.

11  Q  Was there a new affidavit filed?

12  A  It was.

13  Q  Did you sign that?

14  A  Yeah, I did.

15  Q  Did you correct that mistake?

16  A  Yes.

17  Q  Now, going forward, back to when you arrested him, did

18  you place handcuffs on him?

19  A  Yes.

20  Q  About how long did it take for you to place handcuffs

21  on him?

22  A  It took awhile.  I don't know the exact time.

23  Q  On average, how long does it take to place handcuff on

24  a defendant?

25  A  If the person cooperates, it should take no more than

1   five seconds, 10 seconds.

2       Q    Did it take more than that time?

3       A    Yes, it felt longer.

4       Q    Why did it take longer?

5       A    He kept moving his body around, asking me, why, why,

6   why, and I couldn't handcuff him right away.

7       Q    When you arrested him, what is the arrest for?

8       A    The moving violation, which at the time, I assumed, was

9   a red light, and also going the wrong way down a one-way street.

10      Q    Thank you.  Also, was any property recovered in

11  connection with the arrest?

12      A    He had a backpack with him at the time of the arrest.

13      Q    Where was the backpack when you recovered it?

14      A    On his body, on his back.

15      Q    Now, when was the bag recovered?

16      A    Right on the scene at the time.

17      Q    Okay.  Was the defendant under arrest when you

18  recovered it?

19      A    Yes.

20      Q    Did anyone search that bag at the location?

21      A    No.  We searched the bag back at the precinct.

22      Q    Did anyone, other than you, search the bag?

23      A    No.

24      Q    Did anyone look into the bag prior to you searching the

25  bag at the precinct?

1    A    No.

2    Q    Okay.  About how long -- how much time past between the

3    time you recovered the bag at the scene and the time you

4    searched the bag?

5    A    Approximately, I would say, 15 minutes or so.

6    Q    Okay.  Was the bag, throughout that time, in anyone's

7    possession?

8    A    No.

9    Q    Okay.  Why did you search the bag at the precinct?

10   A    First of all, for our own safety.  I don't know what's

11   in the bag.  You know, we have to search for safety reasons.

12        Number two, anything he possessed, at the time, he

13   could not bring down to Central Booking where we go to The Court

14   section, and we have to itemize the property for him and make a

15   safekeeping voucher just to give him a receipt for him to pick

16   it up the next day.

17   Q    Why do you need to keep items for safekeeping?

18   A    It's just the standard procedure of the NYPD.

19   Q    Are there concerns about --

20        MR. WATSON:  Objection.

21        THE COURT:  Don't lead.

22   Q    What is the purpose of documenting each item in the

23   backpack?

24   A    Preventing a lawsuit with people against me.  Also --

25        MR. WATSON:  Objection, Your Honor.

1          THE COURT:  I'll allow it.  He said it's standard
2      procedure.
3      A      Also, for the good of the people who own the property.
4  We know what he had at this location at the time, so we could
5  make a list of it and give him the receipt for it.
6      Q      Now, is there a particular name for the type of search
7  conducted?
8      A      It's called a property invoice.
9      Q      Now, is there a standard procedure for conducting a
10  property invoice search?
11      A      Yes.
12      Q      Could you describe that procedure?
13      A      It's a procedure that -- anything that belongs to the
14  prisoner that we take, we have to itemize his stuff and make a
15  list in a computer entry and also give them the receipt for it.
16      Q      Okay.  What is an inventory search?
17      A      Basically, everything that he had on him at the time,
18  we have to make a list of it, anything that he had at the time.
19      Q      Is that what you did here?
20      A      Yes.
21      Q      Now, does that procedure apply to bags recovered from
22  the defendants who are arrested?
23      A      Say that again?
24      Q      Does that procedure apply to bags recovered from
25  defendants who are arrested?

-P.O. ZHENG - PEOPLE - DIRECT-

1   A    Yes, of course.

2   Q    What, if anything, did you recover?

3   A    I don't have the list right now, if I could refer?

4        MR. MOUCHETTE:  Could I have this document --

5        THE COURT:  Let him look at it to refresh his

6   recollection.

7        This is, what, a property invoice?

8        MR. MOUCHETTE:  Yes, it is, Your Honor.

9        THE COURT:  You have that, Mr. Watson?

10       MR. WATSON:  Yes, Your Honor.

11       THE COURT:  Look at it and see if it refreshes

12  your recollection as to what was in this bag.

13       COURT OFFICER:  (Handing).

14       THE WITNESS:  Yes, that's the voucher that I did

15  for the defendant at the time.

16       THE COURT:  I'm sorry?

17       THE WITNESS:  That's the three vouchers that I did

18  for the defendant at the time.

19  Q    Could you tell us what's in the bag?

20  A    Yes.  There's a necklace and some personal belongings

21  as to sunglasses, a backpack -- the necklace was a separate

22  voucher because it's a jewelry voucher.  Anything belonging in

23  the backpack has separate vouchers.  There was 12 ziplock bags

24  of marijuana, a separate voucher as arrest evidence at the time.

25  Q    Was there anything in the bag that you did not voucher?

-P.O. ZHENG - PEOPLE - DIRECT-

1    A    No.

2    Q    Are you required to voucher everything in the bag?

3    A    Yes.

4    Q    Okay.  Did you do anything different from the standard

5    procedure?

6    A    No.

7    Q    What did you do with the marijuana found?

8    A    I did a field test at the location and it tested

9    positive and I vouchered it as marijuana.

10    Q    Where does it go from there?

11    A    It's sent to the lab, I think.

12    MR. MOUCHETTE:  Nothing further, Your Honor.

13    THE COURT:  I'm going to have you come back at

14    2:15.  We'll do cross-examination.  Don't speak to anybody

15    about your testimony.

16    Mr. Watson, you'll listen to the 911?

17    Hello?

18    You'll listen to the 911 during the lunch break,

19    and you'll be prepared to do your cross-examination at

20    2:15?

21    MR. WATSON:  Yes, Your Honor.

22    THE COURT:  Everybody, be back here at 2:15.

23    (Whereupon, there is a luncheon recess taken and

24    the case is adjourned to 2:15 p.m.)

25    --- A F T E R N O O N    S E S S I O N ---

-PROCEEDINGS-

1    COURT OFFICER:  Number six, case on the record,

2    Heins Rodriguez.

3    MR. WATSON:  Your Honor, so, in this case, there

4    is a civilian complaint, a review board complaint.  At that

5    hearing, Mr. Zheng -- Officer Zheng is probably going to

6    testify.  I believe his testimony is materially different

7    from what was said at this hearing with regards to the Mapp

8    issue.  So, at this point I want to call Police Officer

9    Chen, who is Officer Zheng's partner.

10   THE COURT:  Counsel, I don't understand.  This

11   case is not exactly a new case.  It's going back to August.

12   MR. WATSON:  Yes.

13   THE COURT:  So, why didn't you take care of this

14   before?

15   MR. WATSON:  I didn't know what Police Officer

16   Zheng was going to testify to.

17   THE COURT:  Well, do you have the minutes of the

18   CCRB hearing?

19   MR. WATSON:  Yes.

20   THE COURT:  May I see that?

21   MR. WATSON:  From both officers, Your Honor.

22   THE COURT:  You're telling me if you want to get

23   the partner -- if I look at it and I believe there's

24   nothing in there that's completely different, I'm not going

25   to allow it.  This is not a civil case.

-PROCEEDINGS-

1     MR. WATSON:  Police Officer Chen is page six,

2  Your Honor.

3          THE COURT:  Page what?

4          MR. WATSON:  Page six.

5          COURT OFFICER:  (Handing).

6          THE COURT:  Seems pretty similar to me.

7          MR. WATSON:  Just to be clear, I believe Police

8  Officer Chen testifies that he was the one that recovered

9  the marijuana.

10         THE COURT:  That's not sufficient for me to --

11         MR. WATSON:  In addition -- additionally, that

12  record seems to indicate that the marijuana was recovered

13  at the scene and not at the precinct.

14         THE COURT:  It's great testimony for trial; it's

15  not going to be sufficient for me.

16         MR. WATSON:  I believe that -- Your Honor, I

17  believe that it goes towards whether or not there is an

18  inventory search or whether or not -- whether or not there

19  is an inventory search versus whether or not there's a

20  closed container at the scene.  I believe it's a legal

21  issue to be hashed out at the hearing.

22         If the police officer testifies that he recovered

23  the bag at the scene, it changes the whole hearing,

24  Your Honor.

25         THE COURT:  How?

1    MR. WATSON:  Because there would be a Gokey (ph)

2    issue where here there is none.

3    THE COURT:  Well, I have to determine this

4    officer's credibility.  The fact that two officers may

5    testify a little bit differently is a good thing because if

6    they will testified exactly the same, I probably wouldn't

7    believe it.

8    MR. WATSON:  But I believe that the officer is

9    going to testify that he recovered the marijuana at the

10    scene.

11    THE COURT:  Which officer?

12    MR. WATSON:  Officer Chen.

13    THE COURT:  He already testified --

14    MR. WATSON:  Officer Zheng testified.

15    THE COURT:  You're talking about another officer?

16    MR. WATSON:  Yes, Officer Chen is his partner.

17    THE COURT:  Let me see that again.

18    COURT OFFICER:  (Handing).

19    MR. WATSON:  Just to be clear, Officer Chen was

20    his partner at the time of the arrest.

21    THE COURT:  Page six doesn't say anything about

22    the marijuana.

23    MR. WATSON:  At the bottom of page six.

24    THE COURT:  Okay.  But that doesn't say that he --

25    MR. WATSON:  I don't have the minutes in front of

1    me but I believe --

2         THE COURT:  That's a conclusion.

3         MR. WATSON:  I believe it states in sum and

4    substance:  We arrested him, I searched his bag and we came

5    up with the marijuana.

6         THE COURT:  It says:  I'm checking his bag.

7    Inside his bag there were 12 pouchs of marijuana and now I

8    realized, you know, that's why he fled.

9         MR. WATSON:  His testimony strongly indicates that

10   the marijuana was recovered at the scene, not at the

11   precinct.

12        THE COURT:  Marijuana was recovered at the scene.

13        MR. WATSON:  Yes, but that he searched his bag at

14   the scene.

15        MR. MOUCHETTE:  Your Honor, may I take a look at

16   the minutes?

17        THE COURT:  Yes.

18        COURT OFFICER:  (Handing).

19        MR. WATSON:  ADA Mouchette has been in possession

20   of these minutes.

21        Page six.

22        So, would I be permitted to call the partner,

23   Your Honor?

24        THE COURT:  I'll let you, for whatever it's worth.

25        MR. WATSON:  Thank you.

1      THE COURT:  Where is Ms. Metz?

2      MR. MOUCHETTE:  She's on her way.  I'll give her a

3  call.

4      THE COURT:  Why don't you speak to your officer

5  and see if he knows his partner's schedule?

6      MR. MOUCHETTE:  Okay.

7      MR. WATSON:  Would we have to subpoena him,

8  Your Honor?

9      THE COURT:  No, no.  We'll get him to bring him

10  in.

11      (Whereupon, there is a pause in the proceeding.)

12      COURT OFFICER:  Back on the record with Heins

13  Rodriguez.

14      MR. WATSON:  Your Honor, just to save time, I

15  believe there's a stipulation.  There's two videos of the

16  incident.  I would ask if The People would stipulate them

17  coming into evidence as Defendant's A and B.

18      MR. MOUCHETTE:  Yes.  We turned it over to them,

19  and we don't have any objection to that.

20      THE COURT:  You want to play it?

21      MR. WATSON:  Yes.

22      THE COURT:  You want to do this before we bring

23  the officer in?

24      MR. WATSON:  No.  When the officer is here.

25      THE COURT:  Let's bring the officer in.

-PROCEEDINGS-

```
 1              COURT OFFICER:  Witness entering.

 2              COURT OFFICER:  Officer, let me just remind you

 3    you're still under oath.

 4              THE WITNESS:  Yes.

 5              MR. WATSON:  Just for the record, I just want to

 6    make sure these are in evidence.

 7              THE COURT:  You could sit.

 8              Just remember that you're still under oath.

 9              So, we finished direct.  We're up to cross.

10              Mr. Watson, you have two videos, which will be

11    Defendant's A and B, which you want to play?

12              MR. WATSON:  Yes.

13              THE COURT:  People, you have no objection?

14              MR. MOUCHETTE:  No, Your Honor.

15              THE COURT:  You have no objection to Defendant's A

16    and B going into evidence?

17              MR. MOUCHETTE:  No, Your Honor.

18              THE COURT:  Now we're going to play them.

19              MR. WATSON:  Yes.

20              THE COURT:  Do you want to play them before you

21    have any questions for the officer?

22              MR WATSON:  Can I play them later?

23              THE COURT:  Whenever you want.

24              How long are these tapes?

25              MR. WATSON:  They're a minute and a half each.
```

1          They're not that long.

2                  THE COURT:  All right.

3     CROSS-EXAMINATION

4     BY MR. WATSON:

5          Q     Officer Zheng, so, you've been a police officer for ten

6     years, correct?

7          A     Almost ten -- nine and a half years.

8          Q     Okay.  And you work with the 110th Precinct?

9          A     Yes.

10         Q     Okay.  On August 13, 2015, you were on duty, correct?

11         A     Yes.

12         Q     On that date, you were issuing a bike summons?

13         A     Just for bicyclists, any moving violations for

14    bicyclists.

15         Q     You were on duty with your partner, Police Officer

16    Chen?

17         A     Correct.

18         Q     Okay.  He was with you when you arrested my client?

19         A     Can you rephrase?

20         Q     Police Officer Chen was with you when you arrested my

21    client?

22         A     Yes.

23         Q     He assisted you in arresting my client?

24         A     Yes.

25         Q     Just moving on, you testified on direct that there's an

1    issue with the red light, correct?

2        A    Yes.

3        Q    In fact, you made a mistake when you put in your

4    paperwork that my client ran a red light?

5        A    Yes.  I did charge him with running a red light.

6        Q    When did you make the DA aware of that?

7        A    Sometime after the arrest, the day after or a week

8    after.  I don't remember exactly the date.

9        Q    So, it was about a week?

10       A    I'm not sure.

11       Q    Okay.  Was it --

12       A    I know I signed an affidavit.

13       Q    You signed an affidavit?

14       A    Right.

15       Q    I'm trying to figure out when exactly you made the DA

16   aware of the mistake.

17               THE COURT:  He just said he doesn't remember.

18       Q    Was it more than a month?

19       A    I'm not exactly sure of the time, no.

20       Q    So, Police Officer Zheng, isn't it a fact that you

21   testified at a hearing on September 18, 2015 for a CCRB --

22       A    I don't know the exact date, but I did testify in front

23   of CCRB, yes.

24       Q    At that hearing was Investigator Velasquez?

25       A    I don't remember the name or anything but two

1    investigators were there.

2        Q    And the investigator asked you questions?

3        A    Yes.

4        Q    You answered those questions?

5        A    Yes, I did.

6        Q    Okay.  You also had an attorney with you?

7        A    Yes.

8        Q    Her name was Ms. Freedman?

9        A    I can't remember, I'm sorry.

10       Q    Okay.  In addition to the CCRB, the Internal Affairs

11   Bureau looked into this incident, correct?

12       A    They did.

13       Q    Did you give any statements to the Internal Affairs

14   Bureau?

15       A    No.

16       Q    Also, I believe the chief of the department looked into

17   this incident?

18       A    I assume.  I'm not aware of that, no, I'm sorry.

19       Q    Did you give any statements to any other department

20   other than CCRB?

21       A    Just CCRB, I assume.  I think just CCRB.

22       Q    You spoke to ADA Mouchette about this case, correct?

23       A    Yes.

24       Q    In fact, hours after the arrest you spoke with ADA

25   Mouchette?

1    A    Yes.

2    Q    He's the one that wrote this case up for you?

3    A    I think so, the affidavit, yes.

4    Q    So, yes, ADA Mouchette?

5    A    Yes, I'm sorry.

6    Q    So, on direct you testified about the marijuana,

7  correct?

8    A    I'm sorry, say that again?

9    Q    You testified about recovering marijuana from my

10  client?

11    A    Yes.

12    Q    You testified that you recovered the marijuana at the

13  police station?

14    A    Yes.

15    Q    Okay.  What time would you say you searched my client's

16  bag at the police station?

17    A    Like I said, approximately 15 minutes after the arrest

18  time I got back to the precinct, I think.

19    Q    Okay.  You arrested my client at 1647 hours?

20    A    I'm not sure.  I don't recall exactly the time but --

21    Q    Would anything refresh your recollection?

22    A    Sure, may I use your memo book?

23            THE COURT:  Just look up once your recollection is

24      refreshed.

25            THE WITNESS:  Sure.

1    A      My memo book says 1645.

2    Q      What time was he arrested, my client?

3    A      In my memo book it's 1645.

4           I'm sorry, I'm going to retract.  1645 is when I was

5    told to stop your, client and 1647 is the exact under time,

6    arrest time.

7                THE COURT:  1647 is the arrest time?

8                THE WITNESS:  Correct.

9    Q      And you searched my client's bag 15 minutes later at

10   the precinct?

11   A      Correct.

12   Q      Okay.  Police Officer Zheng, in this case you filled

13   out a marijuana supporting deposition, correct?

14   A      Yes.

15   Q      Okay.  Isn't it a fact that you wrote on that marijuana

16   supporting deposition that at 8/13/2015 at 1647 at 102-10 43rd

17   Avenue in the County of Queens I recovered the above from

18   defendant's backpack.  I believe the above substance to be

19   marijuana based upon my professional training as a police

20   officer in the identification of marijuana?

21               THE COURT:  Counsel, are you reading from the

22        document not in evidence?

23               I'm giving you a little leeway.

24               MR. WATSON:  I'm sorry, Your Honor.

25   Q      Isn't it a fact that you made that report?

1    A    I did do a report but I don't recall exactly.

2         THE COURT:  Why don't you show it to him and see

3    if it refreshes his recollection?

4         COURT OFFICER:  (Handing).

5    Q    Isn't it a fact that you indicate in that marijuana

6    supporting deposition that you recovered the marijuana in my

7    client's backpack at 1647?

8    A    I just put it as an arrest time.  I didn't put exactly

9    what time I got the marijuana.

10   Q    My question to you is, in that document, isn't it a

11   fact that you indicate that you recovered the marijuana at

12   1647 hours?

13   A    Yes, based on that document.

14   Q    You signed this document at the bottom?

15   A    Correct.

16   Q    Under penalty of Perjury?

17   A    Correct.

18   Q    So, going back to the scene of the incident, Officer,

19   you and Officer Chen were issuing bike summonses, as you stated

20   before, on the date of my client's arrest?

21   A    Yes.

22   Q    You were in an unmarked police vehicle?

23   A    Correct.

24   Q    Okay.  You and the other officer were in uniform,

25   correct?

1    A    Yes.

2    Q    104th Street is a one-way street that runs north and

3  south, right?

4    A    No.  104th Street is a one-way street that runs

5  southbound only.

6    Q    You're right.  104th Street runs south.

7         Isn't it a fact that when you encountered my client you

8  testified you were writing a summons for another biker?

9    A    I was.

10   Q    Okay.  That bicyclist, he failed to stop for a stop

11 sign?

12   A    He failed to stop at a stop sign, yeah.

13   Q    You stopped that bicyclist around 4:35 p.m.?

14   A    I could read from my memo book and tell you exactly.

15   Q    Thank you, Officer.

16   A    1635 I made the stop.

17   Q    4:35 p.m.?

18   A    4:35, yes.

19   Q    When you and your partner first encountered

20 Mr. Rodriguez, you were actually inside your police vehicle

21 writing up the summons?

22   A    I was inside.

23   Q    Okay.  When you were inside, you were actually -- you

24 were filling out the summons, correct?

25   A    Correct.

1      Q     After you wrote the summons, you actually documented

2  the time that you made that stop in your memo book?

3      A     For that stop, I didn't have time to do it because I

4  was chasing after him.

5      Q     Okay.  In fact, it wasn't you that first saw my client,

6  it was your partner, Officer Chen, that saw him riding the wrong

7  way --

8      A     Yes.

9      Q     -- or what you say to be the wrong way down a one-way

10  street?

11      A     You've got to remember.  When I do summonses, I'm

12  always alert about what happened to my surroundings.  So, when

13  my partner goes outside, I have to look up and see what my

14  partner is doing and at that point I observed him riding a

15  bicycle the wrong way down the street and I also observed a red

16  light at the same time from my direction.

17      Q     You didn't observe a red light -- you --

18            MR. WATSON:  Withdrawn.

19      Q     You observed a red light in your direction, so you were

20  looking south, correct?

21      A     Correct.

22      Q     But you couldn't see the red light that was facing

23  north?

24      A     As I testified earlier, I did mistake on that one.

25  There was no light facing north for southbound traffic because

1    there's no southbound traffic at that location.

2         Q    All right.  And you testified earlier that my client

3    made a U-turn and went southbound on 104th Street?

4         A    Southbound on 104th.  He made a right turn onto 43rd.

5         Q    Did Mr. Rodriguez ever make eye contact with you?

6         A    Not with me, no.

7         Q    Do you know if Mr. Rodriguez ever made any eye contact

8    with your partner, Officer Chen?

9         A    My partner was standing outside with full uniform on

10   with a hand up to the sky saying, stop.  I don't think he could

11   miss it.

12        Q    My question to you is --

13        A    I don't know.

14        Q    So, you don't know?

15        A    No.

16        Q    Okay.  So, you don't know whether or not my client ever

17   saw --

18                  MR. MOUCHETTE:  Objection, Your Honor.

19                  THE COURT:  I don't know what the question is.

20        Q    You don't know whether or not my client ever saw your

21   partner tell him to stop?

22                  MR. MOUCHETTE:  Your Honor, he --

23                  THE COURT:  Sustained, sustained.

24        Q    In this case you also charged my client with Resisting

25   Arrest, correct?

1    A    Correct.

2    Q    You filled out an arrest report in this case?

3    A    Correct.

4    Q    Resisting Arrest were one of the charges that you

5    placed on your arrest report?

6    A    Correct.

7    Q    The reason that you charged my client with Resisting

8    Arrest is because he flailed his arms?

9    A    He was moving around with his arms (indicating).

10    Q    And he twisted his body?

11    A    Correct.

12         MR. WATSON:  Your Honor, at this point, I'd like

13    to play Defendant's exhibit A.

14         THE COURT:  Sure.

15         Does the officer need to see this?

16         MR. WATSON:  Yes.

17         THE COURT:  So, we should probably tilt it so he

18    could see it.

19         SERGEANT:  Officer, come this way.

20         THE COURT:  We'll do it together.

21         (Whereupon a video was played.)

22         THE COURT:  Just tell me what street this is.

23         THE WITNESS:  43rd Avenue.

24         The traffic light over there is 102nd Street

25    (indicating).

1    THE COURT:  Thank you.

2    104th would be --

3    THE WITNESS:  Behind the blue car, right here

4  (indicating).

5    THE COURT:  Behind the blue car -- what I can't

6  see?

7    THE WITNESS:  Correct.

8    THE COURT:  Is that you (indicating)?

9    THE WITNESS:  One of them is me, the taller one.

10    THE COURT:  Okay.

11    Do you want to play the other one?

12    MR. WATSON:  Yes.

13    (Whereupon a video was played.)

14    THE COURT:  It's exactly the same thing.

15    Do you have anything else, Mr. Watson?

16    MR. WATSON:  Yes.

17  Q    So, after watching this video, after Mr. Rodriguez

18  falls to the floor, you and Police Officer Chen immediately exit

19  the vehicle, correct?

20  A    Correct.

21  Q    Right after you exited the police vehicle, you and

22  Police Officer Chen approached my client?

23  A    Yes.

24  Q    You immediately grabbed his arms?

25  A    Yes.

1   Q    And placed them behind his back?

2   A    Yes.

3   Q    Okay.  But before that, my client puts both hands to

4   his head, and he removed something, correct?

5   A    Yes, I saw that.

6   Q    Were those headphones?

7   A    I don't know.  I just assume so -- yeah, sure.

8            MR. MOUCHETTE:  Objection.

9            THE COURT:  Don't assume.  Don't assume.

10  Q    Let me ask you again, were those headphones that you

11  removed from his ears?

12           THE COURT:  Based on the video can you tell?

13           THE WITNESS:  I can't tell from the video.

14           THE COURT:  Forget about the video; what about

15      when you were there?

16           THE WITNESS:  I don't recall.

17  Q    So, when you did your invoice report, did you

18  recover -- did you invoice any headphones for my client?

19  A    I've got to take a look at the list.

20  Q    Would it refresh your recollection to look at --

21  A    Just the --

22  Q    -- the property clerk invoice?

23           MR. MOUCHETTE:  I have it (handing).

24           COURT OFFICER:  (Handing).

25  A    Yes.

1    Q    So, you vouchered a pair of headphones?

2    A    Yes.

3    Q    All right.  So, from your recollection, do you

4    remember -- can you -- did my client wave, like, flail his arms

5    when you tried to arrest him?

6    A    He was turning his body around with his arms up.

7    Q    Did he ever wave or swing his arms in an attempt to --

8         THE COURT:  Counsel, this has nothing to do with

9    probable cause.  That's a trial issue.

10        MR. WATSON:  Okay.

11    Q    Police Officer Zheng, at the time that you pursued my

12   client and arrested my client, he was riding the right way down

13   43rd Avenue, correct?

14    A    Yes.

15    Q    So, typically, riding a bike down a one-way street,

16   that's typically an offense that you would issue a summons for,

17   correct?

18    A    Yes.

19    Q    At the time that you arrested my client, you arrested

20   him for disorderly conduct?

21    A    Yes.

22    Q    Okay.  Did you arrest him for -- did you arrest him for

23   the VTL summons?

24    A    Yes, the charge was in there.

25    Q    Okay.  So, you also arrested my client for disorderly

1    conduct?

2      A     Yes.

3      Q     Okay. Did he create some kind of hazard?

4      A     People did gather and look around.

5             MR. MOUCHETTE: Objection.

6             THE COURT: Sustained.

7      Q     In this case did my client ever obstruct a vehicle or

8    pedestrian traffic?

9             MR. MOUCHETTE: Objection, Your Honor.

10           THE COURT: Sustained.

11           MR. WATSON: No further questions, Your Honor.

12           THE COURT: Any redirect?

13           MR. MOUCHETTE: Yes, Your Honor.

14           MR. WATSON: Actually, I have some more questions.

15      Q     When you brought my client to the precinct, there's a

16    desk officer at the precinct, correct?

17      A     Yes.

18      Q     When you get to the desk officer, the desk officer

19    usually takes the invoice of all the property that was recovered

20    from the arrestee?

21      A     Say that again?

22             THE COURT: I don't care about what was usually

23      done; just ask him what was done this time.

24      Q     When you arrested my client, you brought him to the

25    precinct?

1    A    Correct.

2    Q    There was a desk officer at the precinct?

3    A    Yes.

4    Q    Okay.  The desk officer is responsible for vouchering

5    evidence?

6    A    No.  I'm responsible for vouchering the evidence.

7    Q    Does the desk officer --

8         MR. WATSON:  Withdrawn.

9    Q    In this case did the desk officer make a list of any

10    items recovered from my client?

11    A    No.  That's not the procedure.  The procedure is I have

12    to make a list of the items and put them in the computer and he

13    has to check them in the computer in a so-called patrol system

14    property envelope invoice system, PET -- it's called PETS.  And

15    he's going to go onto that system to confer the list that I have

16    and the property next to me in the back.

17         THE COURT:  So, he basically just types it in?

18         THE WITNESS:  Correct.

19    Q    Was there a separate document that the desk officer

20    would generate?

21    A    No.  Everything is in the computer now -- so, he would

22    just go into the computer, check the list and sign off with his

23    name on it.

24         MR. WATSON:  Okay.  I have no further questions.

25         THE COURT:  Redirect?

1          MR. MOUCHETTE:  Yes.

2     REDIRECT EXAMINATION

3     BY MR. MOUCHETTE:

4          Q     Officer Zheng, Counsel asked you whether or not

5     August 13, 2015, at 1647 hours was the exact time that you

6     recovered the marijuana, correct?

7          A     I recovered the bag at the time, yes.

8          Q     You recovered the bag and the marijuana was inside the

9     bag?

10         A     Yes.

11               MR. WATSON:  Objection.

12               THE COURT:  Overruled.

13         Q     So, this is, in fact, an accurate statement, correct?

14         A     I recovered the bag, yes.

15         Q     The defendant was in possession -- you were in

16    possession of the marijuana in the bag at that time, correct?

17         A     I was in possession of the bag, yes.

18               THE COURT:  You don't know it was marijuana in

19         there at that time?

20               THE WITNESS:  No.

21         Q     Which you got from the defendant, correct?

22         A     Yes.

23         Q     You previously said you saw the CCRB video?

24         A     Yes.

25         Q     At what point in the video was the defendant under

1  arrest?

2     A    As soon as I put the handcuffs on him.

3     Q    You noted that the arrest time was 1647, correct?

4     A    Correct.

5     Q    Now, that video showed --

6          THE COURT:  You're leading.

7          MR. MOUCHETTE:  I'm sorry, Your Honor.

8     Q    Counsel asked you about CCRB; was it founded or not?

9     A    Unsubstantiated.

10    Q    What does that mean?

11         MR. WATSON:  Objection.  I don't think that's

12    relevant, Your Honor.

13         THE COURT:  It's not.  Sustained.

14         Anything else?

15         MR. MOUCHETTE:  Nothing further, Your Honor.

16         THE COURT:  Counsel?  Only on those two or three

17    questions.

18         MR. WATSON:  Okay.

19 RECROSS-EXAMINATION

20 BY MR. WATSON:

21    Q    So, on redirect you were asked about the marijuana

22 supporting deposition, correct?

23    A    Yes.

24    Q    Okay.  On that marijuana supporting deposition, you

25 indicate --

1          MR. WATSON:  Withdrawn.

2     Q     So, on that marijuana supporting deposition, you

3     indicate that under -- you indicate that you believed the

4     substance to be marijuana based upon your professional training

5     as a police officer, correct?

6     A     It's also field tested at the time.

7          I'm qualified by the NYPD to do a field test of

8     marijuana.

9     Q     Okay.  You indicate that you recover the marijuana at

10    1647; isn't that correct?

11          THE COURT:  He did technically recover it.  He

12     just didn't know it was marijuana, according to his

13     testimony, until he got to the precinct.  That's his

14     testimony, not mine.

15          MR. WATSON:  No further questions.

16          THE COURT:  Thank you, Officer.  You're done.

17          But before you leave, Mr. Watson wants to call his

18     partner for the next date.

19          Does your partner have the same schedule as yours?

20          THE WITNESS:  I could call him right now and tell

21     him to come in tomorrow.

22          THE COURT:  Next week?

23          MR. MOUCHETTE:  I won't be here Wednesday or

24     Thursday.

25          THE WITNESS:  Tuesday?

1    THE COURT:  We'll try and put it on for Tuesday.

2    MR. WATSON:  Tuesday's fine, Your Honor.

3    THE COURT:  I'm probably going to be in AP2; is

4    2:00 okay?

5    MR. WATSON:  That's fine.

6    MR. MOUCHETTE:  That's fine.

7    THE COURT:  What is his schedule?

8    THE WITNESS:  9:30 to 6:00.

9    THE COURT:  Perfect.

10   Will you accommodate us and have the officer here?

11   MR. MOUCHETTE:  Yes.

12   THE COURT:  2:00 p.m.

13   MR. WATSON:  Just for the record, I ask that the

14   ADA or Police Officer Zheng not speak to his partner about

15   --

16   THE COURT:  Don't speak to your partner.

17   MS. METZ:  We're aware of that.

18   (Continued on following page.)

19

20

21

22

23

24

25

1    THE COURT:  Tuesday, I'm going to put this into

2  AP2 for 2:00.

3    Mr. Rodriguez, your lawyer will tell you where to

4  go.

5    AP2, 2:00 p.m.

6    Be on time, otherwise, I'm going to start without

7  you.

8    * * * * * * * * * * * * * * * * * * * * * * * * *

9    This is certified to be a true and accurate

10  transcript of the stenographic notes.

11

12

13

14   _(signature)_

15   DANIELLA CHAMBERLAIN

16   Senior Court Reporter

17                                    -

18

19

20

21

22

23

24

25

CRIMINAL COURT OF THE CITY OF NEW YORK

2  COUNTY OF QUEENS: PART  AP-2

3  - - - - - - - - - - - - - - - - - - - -X

4  The People of the State of New York         Docket

5            -against-                         2015QN040424

6  Heins Rodriguez,                            Calendar call

7            Defendant.

8  - - - - - - - - - - - - - - - - - - - -X

9                                       125-01 Queens Boulevard

10                                      Kew Gardens, N.Y. 11415

11                                      March 29, 2016

12  BEFORE:  Hon. Stephanie Zaro,

13             Criminal Court Judge

14  APPEARANCES:

15      Richard A. Brown, Esq.

16                  District Attorney, Queens County

17                  C. Bolz, Esq.

18          BY:  Robert Hanophy, Esq.

19                  Assistant District Attorney

20                  For the People

21          BY:  The Legal Aid Society

22                  Andre Watson, Esq.

23                  Attorney for the Defendant

24                          David M. Weber

25                          Official Court Reporter

1          COURT OFFICER: Number 85, Heins Rodriguez.

2          MR. WATSON: Legal Aid Society, Andre Watson,

3   W-a-t-s-o-n., on behalf of Mr. Rodriguez.

4          Your Honor, I just would like to make a record.

5          THE COURT: Go ahead.

6          MR. WATSON: Okay. First, today, A.D.A. Mouchette

7   handed me over a copy of the items that were sent between

8   the arresting officer Chang(ph) and his partner, Chance(ph).

9   That exchange took place in the middle of the hearing. Officer

10  Chang(ph) was sworn in earlier that day and cross-examination

11  was to be continued in the afternoon. And in those text

12  messages Officer Chance(ph) and Officer Chang(ph) were

13  communicating about this case, your Honor, specifically about

14  whether or not-- withdrawn-- specifically about where the bag

15  was searched. I do believe that that communication was

16  improper because Officer Chang(ph) was under oath at the time

17  and was not supposed to be discussing his testimony with

18  anyone. So I just want to state that for the record.

19         Additionally, there's some discovery issues, your

20  Honor. It's come to my attention that they're missing pedigree

21  cards.

22         THE COURT: Is it prepared by the officer that

23  already testified?

24         MR. WATSON: Yes.

25         THE COURT: Okay.

1          MR. WATSON: Yes, the pedigree card was prepared by

2     the officer who testified as well as the command log which is

3     a transcription of what the arresting officer prepared. These

4     pieces of discovery are missing, your Honor.

5          So based on that, and what's contained in those two

6     pieces of documentation, I would ask that Officer Chang(ph) be

7     recalled if it's relevant to the hearing.

8          THE COURT: So do you want to just respond to his

9     arguments?

10         MR. BOLZ: Your Honor, a pedigree card contains

11    pedigree information. We will get any documents that, you

12    know, to defense that are required materials. It is not

13    currently in my folder, those documents. So I will talk to the

14    officer and try to get them and provide them to the defense.

15         MR. WATSON: And just for the record, your Honor, ADA

16    Mouchette is in possession of the entire CCRB file. And in the

17    file report the CCRB basically indicates that the CCRB file

18    contains the pedigree card as well as-- pedigree card and--

19    I'm sorry--

20         THE COURT: He has already indicated he doesn't have

21    the pedigree card; he will get it to you.

22         MR. WATSON: Yes, ADA Mouchette does have those

23    documents, your Honor.

24         MR. HANOPHY: Bob Hanophy for the People. I just

25    wanted to add, apparently there was a record by Judge Morris

1   of an alibi, a representative of CCRB, that the only thing

2   that were going to be were to be disclosed were all the

3   recordings and the file report. I just asked ADA Mouchette

4   about counsel's representations; it is theoretically possible

5   that this missing pedigree card might be in our file, which we

6   are under court order not to turn over because it came from

7   CCRB. I am going to go back and check. It came to them from

8   the Police Department. I am just going to give it to him.

9       THE COURT: Thank you. So we don't have to argue

10  about that. What else? Now, let's find out how we are going

11  to do this. I am going to give you an adjournment. We finished

12  with the one witness. Obviously, if there's something in the

13  pedigree card that you need to recall him, then you will

14  recall him on your case.

15      MR. WATSON: Right.

16      THE COURT: Are the People resting? because we don't

17  know whether we actually rested yet, because I don't remember.

18      MR. HANOPHY: I have discussed the matter, and I

19  believe that we are going to call the witness and do a direct

20  examination and have defense counsel do a cross examination of

21  the witness.

22      MR. WATSON: That's correct.

23      THE COURT: So give me a date now that the officer

24  can come back. We will do it again at two p.m., but give me an

25  idea of when you think we will have everybody.

1          MR. HANOPHY: Are we going to do the witness that is

2  here or are we doing the whole thing?

3          MR. WATSON: No, no, no.

4          THE COURT: He doesn't want to do it.

5          MR. WATSON: I was asking.

6          THE COURT: He wants the adjournment.

7          THE PROSECUTOR: Rosario material will be for the

8  other witness, not for this witness, because he doesn't fill

9  out any paperwork, so I don't see why we can't do him.

10         MR. HANOPHY: He's here.

11         MR. BOLZ: Any Rosario material that's relevant

12  would be for Officer Chang(ph), not Officer Chance(ph) because

13  he doesn't fill out any paperwork.

14         MR. WATSON: I do think it's relevant.

15         THE COURT: I don't, but I am going to give you an

16  adjournment any way.

17         MR. WATSON: And also ADA Mouchette also handed over

18  a video-- I'm sorry, an audio of a voice mail that was left by

19  Police Officer Chang(ph).

20         MR. BOLZ: Officer Chen who is here--

21         MR. WATSON: Officer Chen.   .

22         THE COURT: The voice mail of whom?

23         MR. WATSON: They left him, and I can't hear anything

24  that's on that voice mail.

25         THE COURT: And why is that relevant?

1          MR. HANOPHY: It goes along with the text messages.

2          THE COURT: I think one of you-- Off the record.

3          (whereupon there was an off-the-record conversation)

4          THE COURT: He's getting the adjournment. Give me a

5     date.

6          MR. HANOPHY: I can do any time in May, not the last

7     week.

8          THE COURT: What date?

9          MR. BOLZ: April. I'm goine the first week. I

10    am going to be on vacation.

11         MR. WATSON: I can do the second week in April, your

12    Honor.

13         THE COURT: He said he can't do April. He's going to

14    be gone.

15         MR. BOLZ: The second week.

16         THE COURT: You are going the whole month of April?

17         MR. BOLZ: I am going the first week of April

18    into the second week.

19         THE COURT: What about the third week?

20         MR. BOLZ: Third week I start Intake.

21         THE COURT: There's nothing we can do about that. And

22    then what about the last week?

23         MR. BOLZ: I'm in Intake just starting the

24    third and the fourth week, so that's why in May I'm free,

25    but--

1          MR. WATSON: I'm available, your Honor.

2          THE COURT: How is May 2nd, 3rd, 4th?

3          MR. BOLZ: That works.

4          MR. WATSON: Can I have May 3rd?

5          THE COURT: May 3rd. Again I don't know where I am.

6     You will have to look for me. Hopefully I am in JP1, but no

7     guarantees. You know what? I'm going to put this back in JP1,

8     so that's where the file will be. Okay, Mr. Watson?

9          MR. WATSON: Yes.

10         THE COURT: And I will make you the custodian you

11    find where the file is, and then find me.

12         MR. WATSON: No problem.

13         THE COURT: All right.

14

15              *              *              *

16         Certified to be a true and accurate transcript of

17    the minutes taken in the above proceeding.

18                          _David M. Weber_

19                          David M. Weber
                            Official Court Reporter

20

21

22

23

24

25

<pre>
 1              CRIMINAL COURT OF THE CITY OF NEW YORK.
     COUNTY OF QUEENS:           PART AP1
 2   ---------------------------------------X
     THE PEOPLE OF THE STATE OF NEW YORK,   :
 3                                             DOCKET NO.
                       -against
 4                                          :  2015QN040424
     HEINS RODRIGUEZ,
 5                                          :

 6   ---------------------------------------X calendar call

 7                    125-01 Queens Boulevard
                      Kew Gardens, New York 11415
 8
                      May 3, 2016
 9


10
     B E F O R E:
11
                 THE HONORABLE STEPHANIE ZARO,
12                                         Judge.


13


14
     A P P E A R A N C E S:
15

                 OFFICE OF RICHARD A. BROWN
16               DISTRICT ATTORNEY - QUEENS COUNTY
                 BY:  TEMIMAH FRIEDMAN, Esq.
17               Assistant District Attorney


18


19               THE LEGAL AID SOCIETY
                      Attorneys for Defendant
20                    120-46 Queens Boulevard
                      Kew Gardens, New York 11415
21               BY:  ANDRE WATSON, Esq.


22


23                                  FONDA NASON
                              OFFICIAL COURT REPORTER
24


25
</pre>

1 THE COURT OFFICER: Calendar Number 1,

2 Heins Rodriguez.

3 MR. WATSON: Andre Watson, Legal Aid

4 Society, for Mr. Rodriguez.

5 MS. FRIEDMAN: Temimah Friedman for the

6 People.

7 THE COURT: Do we have a disposition?

8 MS. FRIEDMAN: Yes.

9 THE COURT: Mr. Watson, do you now withdraw

10 your motion for the hearing?

11 MR. WATSON: Yes, Your Honor.

12 THE COURT: Offer?

13 MS. FRIEDMAN: ACD, three-month seal.

14 MR. WATSON: Join.

15 THE COURT: Adjournment in contemplation of

16 dismissal, three months. The case will be

17 dismissed and sealed.

18 THE DEFENDANT: Okay.

19 THE COURT: Thank you.

20 _____

21 I hereby certify the foregoing to be a true and

22 accurate transcript of the proceeding.

23 _____

24 Fonda Nason,
  Official Court Reporter

25