UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

HEINS RODRIGUEZ,

                Plaintiff,

v.

CITY OF NEW YORK, et al.,

                Defendants.

16 CV 5861 (NG) (RER)

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

ELEFTERAKIS, ELEFTERAKIS & PANEK
80 Pine Street, 38th Floor
New York, New York 10005
(212) 532-1116

August 14, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. i
ARGUMENT ........................................................................................................................1
    I. The record establishes plaintiff's excessive force and assault claims. ...............................1
    II. On this record, qualified immunity does not apply. ..........................................................6
    III. The negligent infliction of emotional distress claim is supported by the record. ............7
    IV. The negligent hiring, training and retention claims survive. ...........................................8
    V. The defendants fabricated evidence and violated plaintiff's fair trial rights. ...................9
    VI. Plaintiff previously agreed to discontinue certain claims against Chen. .......................12
    VII. Plaintiff's failure to intervene claim survives ...............................................................12
CONCLUSION ....................................................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Brower v. Cty. of Inyo*, 489 U.S. 593 (1989) .................................................................... 3
*C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307 (E.D.N.Y. 2016) ................... 8
*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) .......................................................... 7
*Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003) .................................. 1
*Dancy v. McGinley*, 843 F.3d 93 (2d Cir. 2016) ............................................................. 1, 4
*Daniels v. Gladstone*, 16 CV 190 (PKC) (JO), 2019 WL 3502924 (E.D.N.Y. July 31, 2019) ...... 9
*Evans v. Hightower,* 117 F.3d 1318 (11th Cir. 1997) ......................................................... 4
*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) ...................................... 9
*Graham v. Connor*, 490 U.S. 386 (1989) ........................................................................ 7
*Hartman v. County of Nassau*, 350 F.App'x 477 (2d Cir. 2009) ............................................ 3
*Hartman v. Snelders*, 04 CV 1784 (CLP), 2010 WL 11626508 (E.D.N.Y. Jan. 28, 2010) ........ 2, 5
*Haylett v. City of New York*, 15 CV 223 (WFK) (PK), 2017 WL 6568170 (E.D.N.Y. Dec. 18, 2017) ...................................................................................................................... 8
*Heck v. Humphrey*, 512 U.S. 477 (1994) ............................................................. 10, 11, 12
*Hudson v. New York City*, 271 F.3d 62 (2d Cir. 2001) ....................................................... 4
*Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267 (E.D.N.Y. 2014) ..................... 12
*Loftin v. City of New York*, 15 CV 5656 (MKB), 2017 WL 3614437 (E.D.N.Y. Aug. 21, 2017) 10
*Mangino v. Incorporated Village of Patchogue,* 739 F.Supp.2d 205 (E.D.N.Y.2010) ............... 12
*Maxwell v. City of New York*, 380 F.3d 106 (2d Cir. 2004) .................................................. 1
*McDonough v. Smith*, 139 S. Ct. 2149 (2019) ......................................................... 9, 10, 11
*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) .................................................... 1
*Peralta v. City of New York*, 15 CV 4455 (PKC), 2019 WL 3239349 (S.D.N.Y. July 18, 2019) . 6
*Pereyra v. Eaddy*, 13 CV 4760 (PAC) (MHD), 2015 WL 3953606 (S.D.N.Y. June 29, 2015) ... 13
*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) ............................................... 11
*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) .................................................. 6
*Ricciuti v. New York City Transit Authority*, 124 F.3d 123 (2d Cir. 1997) ............................. 10
*Robinson v. City of New York*, 16 CV 546 (ERK) (ST), 2018 WL 4344949 (E.D.N.Y. Sept. 11, 2018) ...................................................................................................................... 5
*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) .................................................................... 4
*Swift v. McNatt*, 2015 WL 9165967 (W.D. Tenn. Dec. 16, 2015) ......................................... 4
*Tennessee v. Garner*, 471 U.S. 1 (1985) ....................................................................... 1, 7
*Thomas v. City of New York*, 17 CV 6079 (ARR) (JO), 2018 WL 5791965 (E.D.N.Y. Nov. 5, 2018) ...................................................................................................................... 8
*Toscano v. City of Fresno*, 13 CV 01987 (SAB), 2015 WL 4508582 (E.D. Cal. July 24, 2015) 5, 7
*Weather v. City of Mount Vernon*, 474 F. App'x 821 (2d Cir. 2012) ...................................... 6
*Wellner v. City of New York, et. al.*, 16 CV 7032 (JGK), 2019 WL 3729806 (S.D.N.Y. Aug. 8, 2019) ............................................................................................................... 10, 11

## STATUTES

42 U.S.C. §1983 ........................................................................................................ 10, 11
N.Y.P.L. § 205.30 ............................................................................................................ 9
N.Y.P.L. § 221.05 ............................................................................................................ 9
N.Y.P.L. § 70.15 .............................................................................................................. 9

R.C.N.Y. § 4-02(d)(2) .................................................................................................. 6
VTL § 1111(d)(1) ...................................................................................................... 12
VTL § 1122-a ............................................................................................................. 6
VTL §§ 1146(a) .......................................................................................................... 6

## Rules

NYPD Patrol Guide § 212-39 ..................................................................................... 6

## Treatises

M. Bigelow, Leading Cases on Law of Torts 196 (1875) ........................................ 11
Prosser and Keeton 874 ............................................................................................ 11

ARGUMENT

I.  **The record establishes plaintiff's excessive force and assault claims.**

If it should please the Court, plaintiff's arguments regarding his excessive force and assault claims are set forth at Section 3(a) of his Memorandum of Law in Support of his Motion for Partial Summary Judgment dated May 10, 2019 ("Pl. Mem.") (pp. 3-15). In their affirmative motion papers dated July 10, 2019 ("Def. Mem."), defendants argue that Zheng did not sufficiently intend to strike plaintiff with the police car. *See* Def. Mem., Point I(A). This argument fails at inception.

Defendants' specific intent is irrelevant to the excessive force analysis as a matter of law. *Dancy v. McGinley*, 843 F.3d 93, 118 (2d Cir. 2016) ("[I]n the excessive force context, the intent in question can only be the intent to perform some action, not that a particular result be achieved. So long as the plaintiff can point to unreasonable intentional action taken that proximately caused the injury after the seizure is initiated, no additional intent to injure is required."). As the Second Circuit explained in *Nimely v. City of New York*:

> [I]n order to establish that [the officer's] use of force was constitutionally excessive within the meaning of the Fourth Amendment, [plaintiff is] required to show that [the officer's] actions were "objectively unreasonable in light of the facts and circumstances confronting [him], *without regard to [the officer's] underlying intent or motivation.*" *Maxwell v. City of New York,* 380 F.3d 106, 108 (2d Cir. 2004) (internal quotation marks omitted).
>
> With respect to deadly force in particular, "an officer's decision to use deadly force is objectively reasonable *only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.*" *Cowan ex rel. Estate of Cooper v. Breen,* 352 F.3d 756, 762 (2d Cir. 2003) (internal quotation omitted); *see also Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). In all cases, the reasonableness of the officer's decision to use force in effectuating a seizure "depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to

employ deadly force." *Cowan,* 352 F.3d at 762 (internal quotation omitted).

414 F.3d 381, 390–91 (2d Cir. 2005) (emphasis added) (footnote omitted).

The Hon. Cheryl L. Pollak reached a conclusion in accord with these principles in a 2010 decision on *in limine* motions in *Hartman v. Snelders*:

> Plaintiff is correct that defendants need not act with the intent to cause the specific injury that resulted from their actions in order to have committed excessive force. Rather, as this Court will charge the jury, an action is done intentionally if it is done knowingly, that is, if it is done voluntarily and deliberately, and not because of mistake, accident, negligence, or other innocent reason. Likewise, an act is done recklessly if it is done in conscious disregard for its known probable consequences. In determining whether a defendant acted intentionally or recklessly for purposes of an excessive force claim, the jury need not decide whether defendants intentionally or recklessly deprived plaintiff of his constitutional rights. Instead, the relevant question is *whether a defendant intentionally or recklessly committed acts which caused the plaintiff's constitutional rights to be violated*. In this regard, as defendants note, *the amount of force defendants intended to use is not relevant*; the jury will be instructed to focus on the intent to use force and the injury that such force caused. Defendants' intent, or lack of intent, to cause a specific injury is irrelevant, just as it is irrelevant whether the defendants acted with malice, ill will or specific intent to deprive the plaintiff of his constitutional rights.

04 CV 1784 (CLP), 2010 WL 11626508, *17 (E.D.N.Y. Jan. 28, 2010) (citations omitted) (emphasis added).

As defendant Zheng readily admits, he intended to stop and seize plaintiff:

> Q: [W]hat was your plan when you got…in the [police] car?
> A: Stop him to write him a summons.
> Q: …[A]t some point you decided to pull up alongside of [plaintiff]?
> A: Yes.
> Q: [W]hy did you do that?
> A: Hopefully he knows I'm next to him to stop.

Deposition of Zuopeng Zheng, July 25, 2018, pp. 155, 159-60. Chen, the passenger, has admitted that he observed Zheng "cut off" Mr. Rodriguez, conduct that is unquestionably intentional.

Plaintiff's 56.1 Statement dated May 10, 2019 ("Pl. 56.1"), ¶ 25; *see* Screenshot A, annexed to the Declaration of Gabriel P. Harvis dated May 10, 2019 ("Harvis Decl.") as Exhibit 27 (depicting wheel of the vehicle turned toward plaintiff). It is also undisputed that the officers knew, as they pursued plaintiff, that he was suspected only of the most minor of offenses and posed no threat. Pl. 56.1., ¶ 20. Indeed, the officers each admit that they only intended to issue a summons. *Id*. But video evidence tellingly reveals plaintiff's immediate arrest and Zheng's examination of the front passenger door panel of the police car (appearing to check for damage). *Id.* at ¶ 31. In the context of the video footage, the officers' intention to physically seize plaintiff cannot be credibly disputed.

Indeed, under the appropriate analysis, the undisputed facts are that Zheng intentionally drove his patrol car alongside plaintiff's bicycle so as to "cut him off" and "stop him." Pl. 56.1 at ¶ 25. In other words, Zheng *decided* to recklessly pursue a bicyclist (in violation of the Rules of the Road) with the intent to initiate a seizure under the Fourth Amendment. *Brower v. Cty. of Inyo*, 489 U.S. 593, 597 (1989) ("If…the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure."); *see Hartman v. County of Nassau*, 350 F.App'x 477, 479 (2d Cir. 2009) (applying Fourth Amendment where police officer purposely drove into suspect fleeing on foot).

Defendants' suggestion that Zheng only intended to get plaintiff's attention and not to seize him is belied by the record; the admitted object of Zheng's actions was to *stop* plaintiff, not to wave at him and drive on – and he did so with reckless disregard for plaintiff's safety. Pl. 56.1, ¶¶ 22-27. Moreover, under analogous circumstances in *Brower*, the Supreme Court criticized the very sort of inquiry defendants here propose. 489 U.S. at 598 ("[W]e do not think it practicable to conduct such an inquiry into subjective intent.") (collecting cases).

Consider the following scenario:

Defendant Zheng, subjectively intending only to get the attention of a civilian suspect so he could be stopped for a minor violation, aims his firearm and fires slightly to the left of the civilian. To Zheng's surprise, the civilian is struck. Under defendants' rationale, Zheng would have no liability for this conduct because he intended merely to alert the civilian and initiate a stop, and not to shoot him. But such conduct is plainly unconstitutional, as was Zheng's conduct in pursuing plaintiff. *See Dancy,* 843 F.3d at 116-17 (quoting *Hudson v. New York City*, 271 F.3d 62, 68 (2d Cir. 2001) for the proposition that "Section 1983 does not require any intent to violate constitutional rights.") (internal quotation marks omitted); *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) (The Court "must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably.").

The record here is easily distinguished from the facts presented in the cases cited by defendants. In *Evans v. Hightower,* 117 F.3d 1318 (11th Cir. 1997) the plaintiff was struck by an officer accidentally while responding to a fellow officer's call for assistance. *Id.* at 1320. Unlike *Evans*, the defendant officers' object in the instant case was to use the physicality of their police vehicle to affect a seizure, and they did so in a constitutionally unreasonable manner. Likewise, the facts of *Swift v. McNatt*, 2015 WL 9165967 (W.D. Tenn. Dec. 16, 2015) are inapposite. In that case, it was undisputed that plaintiff darted from behind a tree and was struck accidentally, in contrast to the conscious, reckless choice by the defendant officers here to apprehend plaintiff with the instrumentality of their vehicle. *See Brower*, 489 U.S. at 599 (even without direct force, it is "enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result"). Here, unlike in *Robinson v. City of New York*, 16 CV 546

(ERK) (ST), 2018 WL 4344949 (E.D.N.Y. Sept. 11, 2018), video footage and testimony proves that the officers overtook plaintiff and intentionally narrowed the path of his bicycle's travel (likely striking him) – *with no plan and no tactical justification* – and in clear violation of law. Pl. 56.1, ¶¶ 20, 23-24; Pl. Mem., pp. 5-11; *see Toscano v. City of Fresno*, 13 CV 01987 (SAB), 2015 WL 4508582, *4 (E.D. Cal. July 24, 2015) ("The disputed issue of whether the decedent was struck by the patrol vehicle when it accidently fell over or if Defendant Lyon intentionally bumped the bicycle is for the trier of fact to decide.").

Defendants' final argument is that plaintiff cannot challenge the intentionality of the officers' conduct because he was unaware police were pursuing him. Def. Mem., p. 7. This is legally irrelevant and overstates plaintiff's testimony; while he did not know the unmarked car was a police vehicle, he knew a car was dangerously close. As plaintiff explained to Civilian Complaint Review Board ("CCRB") investigators twelve days after the incident:

> [S]o I started going up 43rd Avenue toward 102nd Street….I was not fleeing…I was just riding my bicycle with my headphones on when I…noticed that I received a bump from behind, a rear end hit from a vehicle. When I turned over to my left side I realized that…it was a black car….I didn't see [any] sirens at that moment. I didn't hear anything. All I saw was the car approaching to hit me….I hit a parked car, eventually from the second strike. That's when I flew off my bike…

CCRB Testimony of Heins Rodriguez, August 25, 2015, annexed to the Declaration of Gabriel P. Harvis dated August 14, 2019 ("Harvis Opp. Decl.") as Exhibit 1, p. 4, ln. 15-p.5, ln. 2. The video evidence, consistent with Mr. Rodriguez's testimony, depicts the moment plaintiff looked left as the car overtook him in the moments preceding the collision. Pl. 56.1, ¶¶ 20, 23-24; Pl. Mem., pp. 5-11; *see Hartman*, 2010 WL 11626508 at *17 (in the excessive force context "the relevant question is whether a defendant intentionally or recklessly committed acts which caused the

plaintiff's constitutional rights to be violated"). Thus, this argument has no basis in law or fact and plaintiff's excessive force and assault claims are established.

**II.     On this record, qualified immunity does not apply.**

The second issue defendants raise is qualified immunity. Def. Mem. at Point I(B). However, it is well-settled that qualified immunity does not protect officers who "knowingly violate the law," and plaintiff establishes beyond cavil in his opening brief that the pursuit violated, *inter alia*, VTL §§ 1146(a) and 1122-a, R.C.N.Y. § 4-02(d)(2) and NYPD Patrol Guide § 212-39. Indeed, even if this Honorable Court declines to grant plaintiff's affirmative motion on his assault and excessive force claims, there is at the very least a dispute of fact sufficient to defeat the assertion of qualified immunity at this stage. As the Second Circuit explained in *Weather v. City of Mount Vernon*:

> The law protecting a person against excessive force in this situation is clearly established. Weather was breaking no law, was not resisting arrest, and was not placing himself or others in danger. No reasonable officer would believe that twisting Mr. Weather's arm behind his back and pushing or shoving him into the brick wall outside the school was a lawful use of force in this circumstance, and appellants point us to no cases that indicate otherwise. Further, as the district court wrote on this point that no evidence was presented at trial to suggest that Sergeant Marcucilli made a mistake regarding his legal obligations such that would excuse his actions. Any belief that his conduct was lawful would not be reasonable, given the facts found by the jury. Qualified immunity was appropriately denied here.

474 F. App'x 821, 824 (2d Cir. 2012) (citations and internal quotation marks omitted); *see also*, *e.g.*, *Peralta v. City of New York*, 15 CV 4455 (PKC), 2019 WL 3239349, *6 (S.D.N.Y. July 18, 2019) (denying qualified immunity defense at summary judgment where disputed facts could demonstrate knowing violation of law) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001)).

It has indeed been settled law nationwide for at least thirty years that the use of deadly force under similar circumstances is unconstitutional. *Graham v. Connor*, 490 U.S. 386, 394 (1989) ("This much is clear from our decision in *Tennessee v. Garner, supra.* In *Garner,* we addressed a claim that the use of deadly force to apprehend a fleeing suspect who did not appear to be armed or otherwise dangerous violated the suspect's constitutional rights, notwithstanding the existence of probable cause to arrest.") (citation omitted); *cf. City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ("For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights.").

> A reasonable trier of fact could find that Defendant Lyon violated the Fourth Amendment if he attempted to stop the decedent by bumping the bicycle with his patrol vehicle. Additionally, it is clearly established that where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. In this instance, the decedent was on a bicycle and there are no facts to show that he posed a threat to the officer or others in his attempts to avoid detention. It would be clearly established that Defendant Lyon would violate the decedent's rights by using deadly force in the circumstances presented here. Accordingly, Defendant Lyon's motion for summary judgment on the ground that he is entitled to qualified immunity is denied.

*Toscano*, 2015 WL 4508582 at *7 (brackets, quotation marks and citation omitted). Plaintiff respectfully submits that, for the same reasons, defendants here are not entitled to qualified immunity.

**III.    The negligent infliction of emotional distress claim is supported by the record.**

Defendants' arguments for summary judgment on plaintiff's negligent infliction of emotional distress ("NIED") claim are that it is subsumed in his other claims and that plaintiff has

not demonstrated that defendants engaged in sufficiently outrageous conduct. Def. Mem. Points II and IV.

With respect to the need to demonstrate outrageous conduct, defendants are incorrect as to both the standard and the conduct at issue here.

> Defendants also argue that they cannot be liable for negligent infliction of emotional distress because their conduct did not rise to the of outrageous and extreme conduct that is utterly intolerable in a civilized community. However, recent case law suggests that the conduct at issue need not be outrageous and extreme in order to make out a claim for negligent infliction of emotional distress.

*C.T. v. Valley Stream Union Free Sch. Dist.*, 201 F. Supp. 3d 307, 328 n.14 (E.D.N.Y. 2016) (citations and internal quotation marks omitted) (collecting cases); *see Thomas v. City of New York*, 17 CV 6079 (ARR) (JO), 2018 WL 5791965, *13 (E.D.N.Y. Nov. 5, 2018) ("[N]otwithstanding case law to the contrary, extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress.") (citation omitted).

In any event, as described in plaintiff's affirmative memorandum of law and Local Civil Rule 56.1 statement, the conduct at issue *is* outrageous and did violate duties owed to plaintiff.[1]

## IV. The negligent hiring, training and retention claims survive.

Defendants argue that the parties' accord regarding the scope-of-employment inquiry requires dismissal of plaintiff's negligent hiring, training and retention claims prior to trial. Def. Mem., Point III. But, at this stage, and especially given the evident Patrol Guide and VTL violations attributable to defendants here, the jury might find the conduct outside of the scope, and dismissal would thus be premature. *See Haylett v. City of New York*, 15 CV 223 (WFK) (PK), 2017 WL 6568170, *2 (E.D.N.Y. Dec. 18, 2017) ("Plaintiffs' negligent hiring, training, and retention

---

[1] Plaintiff respectfully acknowledges that – assuming his assault and excessive force claims proceed – there is support in the law for dismissing his NIED claim. *See C.T.*, 201 F. Supp. 3d at 327–28 (citations omitted) (collecting cases).

claims, pleaded in the alternative…survive at [the summary judgment] stage, as they ultimately may only be asserted if Plaintiffs' respondeat superior claims fail…it would be premature and inappropriate to deny the jury this alternative so early in the proceedings.").

V.   **The defendants fabricated evidence and violated plaintiff's fair trial rights.**

Upon review, defendants' fair trial arguments are largely addressed in plaintiff's brief in support of his affirmative summary judgment motion. *See* Pl. Mem. at § 3(b) (pp. 15-18). Below, plaintiff respectfully responds to defendants' arguments regarding materiality and favorable termination in light of *McDonough v. Smith.*

The materiality prong is satisfied as a matter of law because the top charge – misdemeanor Resisting Arrest (N.Y.P.L. § 205.30) – is proven false by video evidence, and the remaining charges are summons or desk appearance ticket eligible *non-criminal violations*. In other words, plaintiff would have received, at most, a ticket for a marijuana violation pursuant to N.Y.P.L. § 221.05 but, due *solely* to the fabricated resisting arrest, red light and wrong-way allegations, plaintiff suffered the liberty deprivation attendant to full-blown criminal prosecution. *See Daniels v. Gladstone*, 16 CV 190 (PKC) (JO), 2019 WL 3502924, *5 & n.15 (E.D.N.Y. July 31, 2019) ("Daniels was issued a summons for unlawful possession of marijuana in violation of New York Penal Law § 221.05, a violation….A violation is punishable by imprisonment of up to fifteen days and a fine of up to $250, whereas a class B misdemeanor is punishable by imprisonment of up to three months and a fine of up to $500.") (citation omitted);[2] *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) ("[T]he prosecutor's decision to pursue charges rather than to dismiss the complaint without further action, may depend on the prosecutor's and magistrate's

---

[2] If it should please the Court, the disparity between the N.Y.P.L. § 221.05 marijuana violation and the misdemeanor charge in this case is more significant because the fabricated misdemeanor, N.Y.P.L. § 205.30 Resisting Arrest, is "Class A" instead of "Class B." *See* N.Y.P.L. § 70.15 (class A misdemeanors punishable by imprisonment up to a year).

assessments of the strength of the case, which in turn may be critically influenced by fabricated evidence."); *Ricciuti v. New York City Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997); *Loftin v. City of New York*, 15 CV 5656 (MKB), 2017 WL 3614437, *8 (E.D.N.Y. Aug. 21, 2017) ("Whether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case.") (collecting cases).[3]

With respect to favorable termination, the Hon. John G. Koeltl recently considered, and rejected, defendants' argument that *McDonough v. Smith*, 139 S. Ct. 2149 (2019) imposes a favorable termination element in § 1983 fair trial claims. *See Wellner v. City of New York, et. al.*, 16 CV 7032 (JGK), 2019 WL 3729806, at *6 (S.D.N.Y. Aug. 8, 2019) ("The defendants next argue that the recent Supreme Court decision *McDonough v. Smith*…adds an element to a claim for the denial of the right to fair trial – namely, that the prosecution against the accused must end in the accused's favor… *McDonough*, however, offered no occasion to determine whether a plaintiff could pursue a fabricated evidence claim despite the existence of some conviction. *The Supreme Court was clear on this issue*.") (emphasis added).

As Judge Koeltl articulated in *Wellner*, use of the term "favorable termination" by the *McDonough* Court does *not* impose a blanket favorable termination requirement in § 1983 fair trial claims, nor does it otherwise convert a fair trial claim into one for malicious prosecution. Rather, it incorporates favorable termination into the deferred-accrual analysis required under *Heck v. Humphrey*. In *Heck*, the Supreme Court held that a convicted §1983 plaintiff may not challenge the conviction unless he can demonstrate it has been overturned. 512 U.S. 477, 486-87 (1994). The reasons for this requirement were discussed in *McDonough*:

> As *Heck* explains, malicious prosecution's favorable-termination requirement is rooted in pragmatic concerns with avoiding parallel

---

[3] By falsely describing the events, defendants also caused plaintiff to be further deprived of a liberty interest through the denial of no-fault insurance coverage. *See* Plaintiff's 56.1 Statement, ¶ 48.

> criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments. The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation. These concerns track similar concerns for finality and consistency that have motivated this Court to refrain from multiplying avenues for collateral attack on criminal judgments through civil tort vehicles such as §1983.

139 S. Ct. at 2156-57 (internal citations omitted).

Viewed in this context, the "favorable termination" concept mentioned in *McDonough* (and adopted by Judge Koetl in *Wellner*) is qualitatively different than the "favorable termination" element of a malicious prosecution claim, which dates to common law and is tethered to the Fourth Amendment. *McDonough*, 139 S. Ct. at 2161 n.10 (describing as "capacious" the appropriate analytical framework for considering favorable termination in fair trial context) (Sotomayor, J.). Fair trial claims, on the other hand, sound in due process and are incompatible with a favorable termination element. *See Poventud v. City of New York*, 750 F.3d 121, 130 (2d Cir. 2014) (en banc) (holding that procedural due process claims do not depend on a showing of factual innocence or "favorable termination": "The district court's view incorrectly presumes that, on the facts of this case, the State could violate Poventud's *Brady* rights only if Poventud is an innocent man.").

As Justice Souter explained in his *Heck* concurrence:

> Absent an independent statutory basis for doing so, importing into § 1983 the malicious-prosecution tort's favorable-termination requirement but not its probable-cause requirement would be particularly odd since it is from the latter that the former derives. *See* Prosser and Keeton 874 ("The requirement that the criminal prosecution terminate in favor of the malicious prosecution plaintiff ... is primarily important not as an independent element of the malicious prosecution action but only for what it shows about probable cause or guilt-in-fact"); M. Bigelow, Leading Cases on Law of Torts 196 (1875) ("The action for a malicious prosecution cannot be maintained until the prosecution has terminated; for otherwise the plaintiff might obtain judgment in the one case and yet

> be convicted in the other, which would of course disprove the averment of a want of probable cause").

*Heck*, 512 U.S. at 494 (Souter, J., concurring).

Critically, it cannot be disputed that the fabricated allegation that proximately led to the disputed events – that plaintiff ran a non-existent red light in violation of VTL § 1111(d)(1) – was favorably terminated as a matter of law when defendant Zheng filed an amended criminal complaint removing the charge. *See* Defendants' 56.1 Statement dated July 10, 2019, ¶¶ 12-13; *Liberty Synergistics, Inc. v. Microflo Ltd.*, 50 F. Supp. 3d 267, 289 (E.D.N.Y. 2014) ("Where…the [charge] was terminated by abandonment under circumstances not "inconsistent with innocence," it is a favorable termination.") (citing *Mangino v. Incorporated Village of Patchogue,* 739 F.Supp.2d 205, 228 (E.D.N.Y. 2010)). As plaintiff was innocent of the charge upon which the seizure was premised, and it was subsequently abandoned without compromise, he has carried his burden with respect to his fair trial claim under any analysis.

## VI. Plaintiff previously agreed to discontinue certain claims against Chen.

At oral argument on the parties' pre-motion requests, plaintiff agreed to discontinue any claim against defendant Chen, the passenger, for the vehicular pursuit and assault of plaintiff. However, plaintiff maintains that defendant Chen is liable for his battery of plaintiff and other conduct following the collision, including his failure to intervene in the forwarding of false evidence.

## VII. Plaintiff's failure to intervene claim survives.

Defendants' sole argument against the failure to intervene claim is that it rises and falls with plaintiff's other constitutional claims. Since those claims survive (and are, indeed, established), the failure to intervene claim also survives. *Pereyra v. Eaddy*, 13 CV 4760 (PAC)

(MHD), 2015 WL 3953606, *8 (S.D.N.Y. June 29, 2015) (Crotty, J.) ("Generally, the question of whether intervention was feasible is one for the jury.") (citations omitted).

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Honorable Court deny defendants' motion for partial summary judgment in its entirety and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
August 14, 2019

                              ELEFTERAKIS, ELEFTERAKIS & PANEK

                              _____
                              Gabriel P. Harvis
                              Baree N. Fett
                              80 Pine Street, 38th Floor
                              New York, New York 10005
                              (212) 532-1116
                              gharvis@eeplaw.com

                              *Attorneys for plaintiff*

To: Defense Counsel