UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

HEINS RODRIGUEZ,

                                    Plaintiff,                    **OPINION & ORDER**

                        -against-                                 **16-cv-5861 (NG)(RER)**

CITY OF NEW YORK; Police Officer
ZHENG ZUOPENG, Shield No. 25461;
Police Officer ALEN CHEN, Shield No.
28461; Sergeant MATTHEW S.
STARRANTINO; and JOHN and JANE
DOE 1 through 10, individually and in their
official capacities (the names John and Jane
Doe being fictitious, as the true names are
presently unknown),

                                    Defendants.

------------------------------------------------------------ x
GERSHON, United States District Judge:

    Plaintiff Heins Rodriguez brings claims under 42 U.S.C. § 1983 and New York state law

against defendants the City of New York, Police Officer Zuopeng Zheng, Police Officer Alen

Chen, and Sergeant Matthew S. Starrantino in connection with an incident in which he was

stopped while riding his bicycle and then arrested on August 13, 2015.  Specifically, plaintiff has

raised constitutional claims of excessive force, denial of the right to a fair trial, and failure to

intervene, and state law claims of assault and battery, negligent infliction of emotional distress,

and negligent hiring, training, and retention.  The parties dispute whether plaintiff has raised a

negligence claim against Officer Zheng.

    Plaintiff and defendants now move for partial summary judgment.  For the reasons stated

below, plaintiff's motion is denied, and defendants' motion is granted in part and denied in part.

I.     **Factual Background**

Unless otherwise stated, the following facts are undisputed.

On August 13, 2015, plaintiff was riding his bicycle in Queens on his way to meet his mother.  He had earphones in his ears which he was using to listen to music playing on his phone.  Plaintiff was wearing a backpack; he was not wearing a helmet.  Officers Chen and Zheng were parked in an unmarked police car near the intersection of 43rd Avenue and 104th Street.  The officers were assigned to the NYPD's "bike initiative," which issues moving violations to cyclists.

At about 4:45 p.m., Officer Chen observed plaintiff riding his bicycle northbound on 104th Street toward the intersection of 43rd Avenue.  104th Street is a one-way street, allowing only southbound traffic, though the parties dispute whether the road was closed to vehicular traffic for construction on that day.  Officer Zheng testified that he thought he also saw plaintiff run a red light at the intersection.  Officer Chen attempted to stop plaintiff to issue him a summons by stepping out of the police car and using a hand signal.  Officer Zheng remained inside the police vehicle, where he was writing a summons for another bicyclist whom the officers had previously stopped.

Plaintiff saw Officer Chen and turned around, riding his bicycle westbound on 43rd Avenue.  The officers, with Officer Zheng driving and Officer Chen in the passenger seat, then followed plaintiff in their car with the intention of issuing him a summons.  According to Officer Zheng, the police car's lights and sirens were on.  Officer Zheng was not sure how fast he was driving, but he thought that it was faster than 10 miles per hour and may have been more than 15 miles per hour.  According to Officer Chen's testimony, the police car was "possibly" going more than 30 miles per hour.  Chen Dep. at 59.

Officer Zheng testified that, after following plaintiff for less than 30 seconds, he pulled his vehicle alongside plaintiff to get plaintiff's attention to stop.  Officer Zheng thought Officer Chen might "scream out a window" to plaintiff, although he had not discussed this plan with Officer Chen.  Zheng Dep. at 157–58.  Officer Chen, by contrast, testified that the officers planned to drive past plaintiff, stop their car, step out, and again motion to plaintiff to stop.

While the officers were pursuing him, plaintiff fell off his bike, hit a parked car, and landed on the ground.  A central dispute is what caused this to happen.  Plaintiff has offered differing explanations.  At his deposition, he testified that the right side of the police car hit the left side of his body, causing him to fly into the air, hit a parked car, and land on the street.  He said that he had not been aware of the police car's presence until it struck him.  On other occasions, plaintiff said the police car cut him off, causing him to hit the parked car.

Both officers have denied that the police car struck plaintiff.  Officer Zheng testified that, while he and Officer Chen were pursuing plaintiff, and when the police car was about a foot or two away from him, plaintiff lost control and fell off his bike.  Officer Zheng later concluded that plaintiff's bicycle had hit the parked car when that car's owner showed him a scratch on his driver's side door.

When deposed, Officer Chen testified that, after the police car passed plaintiff and stopped, he heard "a thud noise" and assumed that plaintiff had hit the parked car, although he did not see him fall.  Chen Dep. at 70–72.  Officer Chen also testified that the police car was never closer than three feet from plaintiff.  He did acknowledge that Officer Zheng "possibly" turned the car in front of plaintiff's bike to cut plaintiff off.  *Id.* at 94.  During an interview with the Civilian Complaint Review Board ("CCRB"), Officer Chen was more explicit: "By the time

we got to 102 Street, we were alongside the bicyclist.  And we cut him off.  And at that point, the bicyclist, I guess he lost control somehow."  Pl. Exh. 8 at 6.

There are videos of the incident from two surveillance cameras.  The videos capture the moment plaintiff fell off his bike and the officers' subsequent arrest of him.  They start as the car that plaintiff ultimately hit parks on the side of the road by a fire hydrant.  Soon after, both plaintiff, on his bicycle, and the unmarked police car come into view and plaintiff is seen falling forward.  The videos do not show whether there was contact between plaintiff's bicycle and the police car, but they do show that the police car was turning towards the curb—that is, in the direction of plaintiff—at the time that plaintiff fell.[1]  When plaintiff falls, he and his bike travel several feet in the air and the right side of plaintiff's body lands with significant impact on the road.  Plaintiff stands up quickly.

According to the officers' testimony and corroborated by the videos, after plaintiff's fall, Officer Zheng stopped the police car, the police officers exited, and they immediately handcuffed plaintiff.  Officer Zheng testified that plaintiff resisted arrest by twisting his body around "a little bit."  Zheng Dep. at 228−30, 309−10.  Officer Chen testified that plaintiff resisted arrest by flailing his arms, but the videos do not depict him doing so.

Four minutes after plaintiff's arrest, Sergeant Starrantino arrived at the scene.  The officers removed plaintiff's backpack, which was still on his back, opened it, and examined its contents.  The backpack contained marijuana.

The officers transported plaintiff to the police precinct, where they called an ambulance.  Plaintiff told EMS that a car came up from behind him and "narrowed into his path and knocked

---

[1]  According to plaintiff, the videos of the incident show Officer Zheng examine the front passenger door panel of the police car.  While they do show him briefly looking at the passenger side of the car after plaintiff has been handcuffed, it is not clear whether he is examining the door for damage.

him into a parked car causing him to tumble off of the bike and flip over."  Pl. Exh. 10 at 3.  He complained about pain to the whole right side of his body, especially his elbow.  After plaintiff was treated at Elmhurst Hospital Center, officers brought him back to the precinct.

On August 13, 2015, Officer Zheng signed a criminal court complaint charging plaintiff with Obstructing Governmental Administration in the Second Degree ("OGA"), in violation of N.Y. Penal Law § 195.05; Resisting Arrest, in violation of N.Y. Penal Law § 205.30; Unlawful Possession of Marijuana, in violation of N.Y. Penal Law § 221.05; Disorderly Conduct, in violation of N.Y. Penal Law § 240.20(5); driving against traffic on a one-way roadway, in violation of N.Y. Vehicle and Traffic Law § 1127-A; and not obeying traffic laws, in violation of N.Y. Vehicle and Traffic Law § 1231.[2]

> Officer Zheng prepared an Arrest Report with the following narrative:
>
> Def was observed riding a bike going N/B on 114 Street against traffic and fail to stop at steady red light.  After a uniform officer told def to [s]top, def then fled scene on his bike.  While running away from [arresting officer] def did hit a parked car fell off his bike scratched his right elbow.  Upon arrest, def did flare his arm refused to be handcuffed.  During [search incident to lawful arrest], def did have 12 zip bags of marijuana in his backpack.

Pl. Exh. 15 at 1.  In a Resisting Arrest Supporting Declaration, Officer Zheng stated that plaintiff had flailed his arms, held his arms against his body, struggled with the officer, and refused to be handcuffed.  And, in a Disorderly Conduct Supporting Deposition, the officer wrote that plaintiff had committed disorderly conduct by "going wrong way on one way st. in midlane and pass steady red light," "fleeing from officer on a bike in a reckless manner," causing a crowd to gather in response to his actions, and blocking traffic, resulting in a traffic jam.  Pl. Exh. 12.

---

[2] In their 56.1 Statement, defendants write that plaintiff also was charged with failing to stop at a red traffic signal light, in violation of N.Y. Vehicle and Traffic Law § 1111-D1, and they do not mention that plaintiff was charged with OGA.  Defs.' Statement Pursuant to Local Civil Rule 56.1, ¶ 12.  While plaintiff does not dispute defendants' description of the charging instrument, that description is not correct based on my review.  *See* Defs.' Exh. F.

On August 14, 2015, plaintiff was arraigned in criminal court and released on his own recognizance.

When Officer Zheng next met with the prosecutor assigned to the case, he told the prosecutor that "the red light charge [] couldn't be sustained." Zheng Dep. at 196. This was because, according to the officer, the next time he passed by the intersection of 104th Street and 43rd Avenue, he realized that the traffic light at the intersection was a "three-phase light," meaning that vehicles traveling northbound, as Mr. Rodriguez had been, did not have a traffic light. *Id.* at 194.

On December 7, 2015, Officer Zheng executed an amended criminal court complaint which removed the allegation that plaintiff ran a red light, but perplexingly now included the charge of failing to stop at a red traffic signal light, in violation of N.Y. Vehicle and Traffic Law § 1111-D1. The amended complaint also removed a charge of OGA.[3]

 Plaintiff appeared in criminal court on 10 occasions. At his last appearance, on May 3, 2016, the prosecution offered him an adjournment in contemplation of dismissal ("ACD") to resolve the charges against him. Plaintiff accepted the ACD, and the case was later dismissed and sealed.

Plaintiff claims that, as a result of the accident, he suffered persistent injuries that have limited his ability to work.

---

[3] Defendants' characterization of this document—which plaintiff does not dispute—again does not comport with my review of it. *See* Defs. Exh. G. Defendants claim that the amended criminal court complaint removed the red traffic signal light charge and added a charge of OGA. Defs.' Statement Pursuant to Local Civil Rule 56.1, ¶ 13.

## II.     Procedural History

Plaintiff filed this action on October 20, 2016.  On July 6, 2017, he filed a First Amended Complaint (the "Complaint"), in which he asserted claims against the individual officer defendants of excessive force under the Fourth and Fourteenth Amendments, denial of the constitutional right to a fair trial, failure to intervene under § 1983, and New York state law claims of assault and battery and negligent infliction of emotional distress.  Plaintiff also alleged that the City was liable for negligent hiring, training, and retention and that, under the theory of *respondeat superior*, it was liable for assault and battery and negligent infliction of emotional distress.

At a pre-motion conference, plaintiff agreed to the voluntarily dismissal of all claims against Sergeant Starrantino.  He also dropped the following claims against Officer Chen: all those involving "the incident with the car because he[ was] a passenger," denial of the constitutional right to a fair trial, negligence,[4] and negligent infliction of emotional distress.

Plaintiff and defendants now move for summary judgment.  Plaintiff has moved for summary judgment on his claims against Officer Zheng of excessive force, assault and battery, and, in the alternative, negligence.  He also seeks summary judgment on his claim of denial of his right to a fair trial against Officer Zheng.  Defendants have moved for summary judgment on plaintiff's claims of excessive force, assault and battery, denial of the constitutional right to a fair trial, and negligent infliction of emotional distress against Officer Zheng; failure to intervene

---

[4] As discussed below, defendants subsequently argued that the Complaint did not raise a negligence claim against the individual officers.

against both individual officers; and negligent hiring, training, and retention against the City.[5] Defendants also argue that plaintiff should not be permitted to pursue a negligence claim against Officer Zheng.

## III.   Summary Judgment Standard

A party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only disputes relating to material facts—*i.e.*, "facts that might affect the outcome of the suit under the governing law"—may preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has asserted facts showing that the nonmovant's claims cannot be sustained, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

In determining whether to grant summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir.

---

[5] Defendants also move against plaintiff's claims of excessive force and assault and battery against Officer Chen on the basis that Officer Chen was not driving the police car. Plaintiff responds that he previously agreed, at the pre-motion conference, to drop any claims against Officer Chen related to "the vehicular pursuit and assault of plaintiff," but he still "maintains that defendant Chen is liable for his battery of plaintiff and other conduct following the collision, including his failure to intervene in the forwarding of false information." Pl. Opp. at 12. Defendants did not address plaintiff's claim that Officer Chen is liable for battery in their reply.

2010).  But "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.  While "circumstantial evidence may be . . . sufficient to raise a genuine issue of material fact precluding the grant of summary judgment," *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002), a party cannot survive a motion for summary judgment by relying on "mere speculation or conjecture as to the true nature of the facts." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks omitted).

**IV.    Discussion**

  **a.  Excessive Force under the Fourth Amendment and Assault and Battery under State Law**

   Both sides move for summary judgment on plaintiff's claims against Officer Zheng for excessive force under the Fourth Amendment and assault and battery under New York law. "[E]xcept for § 1983's requirement that the tort [of excessive force] be committed under color of state law, the essential elements of [excessive force and state law assault and battery claims are] substantially identical." *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009).  Because there is no dispute that Officer Zheng acted under color of state law, I will analyze the claims together.

   Defendants argue that plaintiff cannot show that Officer Zheng acted with the requisite intent to sustain these claims.   The Fourth Amendment protects individuals from seizures executed with excessive force. *See Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  An officer's intent is relevant to establishing a claim of excessive force under the Fourth Amendment, but only "to a limited extent." *Dancy v. McGinley*, 843 F.3d 93, 116 (2d Cir. 2016).  "A plaintiff must prove that an officer intended to commit acts that constituted a seizure in the first instance" because "[t]he Fourth Amendment is not implicated absent a 'governmental

termination of freedom of movement *through means intentionally applied*.'" *Id.* (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 596–97 (1989)); *see Torres v. Madrid,* 592 U.S. __, 141 S. Ct. 989, 1001 (2021). "[A]s long as an officer deliberately performed acts that constitute a seizure, the Fourth Amendment has been triggered, regardless of whether it was accomplished by the exact method intended." *Dancy*, 843 F.3d at 116. "[O]nce a seizure is initiated, an officer's objectively unreasonable conduct may violate the Fourth Amendment regardless of whether the officer intended any injury to result." *Id.* at 117.

Here, construing the facts in the light most favorable to plaintiff, a jury could conclude that, to stop plaintiff, Officer Zheng intended to use the police car to block plaintiff's path of travel or even to hit plaintiff's bicycle. Either one of these circumstances would constitute a seizure under the Fourth Amendment. The latter circumstance is obvious. Regarding the former, the Supreme Court's decision in *Brower* is instructive. There, the police, who were engaged in a high-speed car chase of Brower, the petitioner, set up a roadblock that crossed both lanes of the highway, and Brower was killed when the stolen car he was driving crashed into the roadblock. *Brower*, 489 U.S. at 594. The Court concluded that the roadblock constituted a seizure, explaining:

> In marked contrast to a police car pursuing with flashing lights, or to a policeman in the road signaling an oncoming car to halt, a roadblock is not just a significant show of authority to induce a voluntary stop, *but is designed to produce a stop by physical impact if voluntary compliance does not occur.*

*Id.* at 598 (emphasis added and internal citations omitted).

In this case, the evidence would allow the jury to conclude that Officer Zheng maneuvered his car to "produce a stop by physical impact if voluntary compliance [did] not occur." *See id.* First, plaintiff's descriptions of the events, as well as the videos, support such a conclusion. In addition, Officer Chen told the CCRB that the police car "cut [plaintiff] off," Pl.

10

Exh. 8 at 6, and said at his deposition that Officer Zheng "possibly" turned in front of plaintiff's bicycle to cut him off, Chen Dep. at 94.

Although Officer Zheng stated that he planned merely to ride alongside plaintiff to get him to stop, a jury could discredit his testimony in the face of the evidence to the contrary. Officer Zheng admitted to driving within one or two feet of plaintiff, and the videos appear to show that the front wheels of the police car were turned towards plaintiff when he fell.   In addition, while Officer Zheng testified that he expected Officer Chen to "scream out a window" to plaintiff once they rode up alongside him, Officer Zheng admitted that he had not shared this plan with Officer Chen.  Zheng Dep. at 157−58.  Indeed, Officer Chen testified that he was under the impression that they would execute a different plan: riding past plaintiff and stopping their car so that Officer Chen could "get out to signal him to stop."  Chen Dep. at 93.

That Officer Zheng may have hoped that, by cutting plaintiff off, he would induce him to stop his bicycle voluntarily, not fall to the ground, is irrelevant to the analysis.  *See Brower*, 489 U.S. at 598 ("It may well be that respondents here preferred, and indeed earnestly hoped, that Brower would stop on his own, without striking the barrier, but we do not think it practicable to conduct such an inquiry into subjective intent.").  "[I]t is enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result." *Id.* at 599.  In short, the record contains ample evidence that plaintiff was "stopped by the very instrumentality set in motion or put in place in order to achieve that result."   *See id.* Accordingly, defendants are not entitled to summary judgment on plaintiff's excessive force claim under the Fourth Amendment or state law.[6]

---

[6] Defendants rely heavily on *Robinson v. City of New York*, 2018 WL 4344949, at *1 (E.D.N.Y. Sept. 11, 2018), where the plaintiff, who was fleeing from the police on foot, was injured when he ran into the road and was struck by a police car.  The court granted summary judgment to

Nor is plaintiff entitled to summary judgment on these claims. Construing the facts in the light most favorable to defendants, a jury could find that Officer Zheng did not intend to use his car to seize plaintiff. The officer testified that he planned to get plaintiff's attention through "[l]ights and sirens and tell him to stop." Zheng Dep. at 156. If the jury credits this testimony, it could find that the officer did not seize plaintiff. *See Torres*, 141 S. Ct. at 995 ("The common law distinguished the application of force from a show of authority, such as an order for a suspect to halt. The latter does not become an arrest unless and until the arrestee complies with the demand."); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) ("[N]o Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." (quoting *Brower*, 489 U.S. at 597)). Thus, the determination as to whether a seizure occurred must be reserved for the jury. *See Toscano v. City of Fresno*, 2015 WL 4508582, at *4 (E.D. Cal. July 24, 2015).

"'[S]eizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'" *Brower*, 489 U.S. at 599. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). Considerations include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

defendants on plaintiff's excessive force claim. *Id.* at *5. Despite defendants' argument otherwise, *Robinson* supports my conclusion here. The court recognized that, had plaintiff argued that "using a car as a roadblock to stop his path of flight violated the Fourth Amendment," "[t]his course of events would constitute a Fourth Amendment seizure" under *Brower. Id.* at *4 n.8. As discussed above, the record in this case includes evidence that Officer Zheng deliberately used his car as a roadblock to block plaintiff's path.

or attempting to evade arrest by flight." *Id.* Here, there are disputed facts as to whether the seizure, if there was one, was unreasonable.[7]

In sum, defendants' and plaintiff's motions for summary judgment on plaintiff's claims of excessive force under the Fourth Amendment and assault and battery are denied.

### b. Excessive Force under the Fourteenth Amendment

The parties also move for summary judgment on plaintiff's claim of excessive force under the Fourteenth Amendment. The Fourteenth Amendment applies only to excessive force claims that do not involve "an arrest, investigatory stop, or other 'seizure' of a free citizen." *Graham*, 490 U.S. at 395; *accord Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998). As described above, questions of fact remain as to whether Officer Zheng's intended to seize plaintiff, and therefore summary judgment on this claim is also inappropriate.

### c. Whether Officer Zheng is Entitled to Qualified Immunity on Plaintiff's Excessive Force Claim

Defendants argue that Officer Zheng at least is entitled to qualified immunity on plaintiff's excessive force claim under § 1983. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Therefore, even if a police officer is found liable for

---

[7] Plaintiff argues otherwise by claiming that Officer Zheng used "deadly force" against him. In cases involving deadly force, a court must instruct the jury that "it is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013) (alterations and quotation marks omitted). Plaintiff correctly asserts that defendants would not be able to meet this standard. But the Second Circuit has limited the standard to cases involving "'evidence of the use of force highly likely to have deadly effects'"—specifically, "the fatal shooting of an unarmed suspect." *Id.* at 334 (quoting *Terranova v. New York*, 676 F.3d 305, 309 (2d Cir. 2012)). In fact, in *Terranova*, the Court, relying on the Supreme Court's decision in *Scott v. Harris*, 550 U.S. 372, 379−83 (2007), found that a traffic stop used to apprehend suspects did not constitute deadly force. 676 F.3d at 309.

using excessive force, the officer may be entitled to qualified immunity if it was not objectively unreasonable for him or her to believe that the use of such force was lawful. "The objective reasonableness test is met—and the defendant is entitled to immunity—if officers of reasonable competence could disagree on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks omitted). Defendants assert that, "[e]ven assuming Officer Zheng struck plaintiff with the police vehicle or came so close to plaintiff that he hit a parked car," "no controlling precedent" at the time of plaintiff's arrest "would have compelled every reasonable police officer to conclude that [Officer Zheng] was barred from pulling up alongside plaintiff in his police vehicle." Defs.' Memo. of Law at 10.

Defendants fail to acknowledge the factual dispute as to whether Officer Zheng merely intended to pull alongside plaintiff or deliberately cut off his path of travel with his vehicle. I thus deny defendants' motion for summary judgment based on qualified immunity as it is subject to the same "genuine, material, factual disputes" as the excessive force claim itself. *See Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 764 (2d Cir. 2003).

### d. Negligence

If I determine, as I have, that summary judgment on plaintiff's claims of excessive force and assault and battery against Officer Zheng is not appropriate, plaintiff seeks summary judgment on his negligence claim against the officer, arguing "that the undisputed evidence proves at least negligence." Pl.'s Memo. of Law at 1−2. But, if I find that "factual disputes predominate," plaintiff asks that the "question of intent [] be put to a jury." *Id.* at 5. Defendants argue that plaintiff is not entitled to pursue a negligence claim against Officer Zheng because he raised it for the first time on summary judgment and, alternatively, that he is not entitled to

summary judgment on the claim because he has not shown that Officer Zheng was negligent as a matter of law.

I must first decide whether plaintiff may pursue a negligence claim at all against Officer Zheng.  In the Complaint, negligence is mentioned once—in the heading of the section setting forth plaintiff's third claim.  That section, which is entitled "Negligence; Negligent Hiring, Training & Retention," focuses on the liability of the City for the actions of the individual defendants, not on the liability of the individual defendants themselves.

Plaintiff nonetheless argues that defendants have been aware that he was asserting a negligence claim against Officer Zheng.  In addition to citing his use of the term "negligence" in the Complaint, plaintiff notes that negligence was mentioned in his Notice of Claim, in the parties' proposed joint pre-trial order, and in defendants' pre-motion conference letters.  According to plaintiff, "the parties have been litigating negligence as a core claim in this case from the outset."  Pl. Reply at 2.

Although I agree with defendants that the Complaint does not indicate that plaintiff has raised a negligence claim against Officer Zheng, I will allow plaintiff to pursue this claim by treating the Complaint as amended.  Defendants do not argue, nor could they, that they will be prejudiced by such a ruling.  *See Block v. First Blood Assocs.*, 988 F.2d 344, 350–51 (2d Cir. 1993).  To the contrary, defendants addressed the merits of a negligence claim against Officer Zheng in a pre-motion conference letter.  Moreover, no additional discovery is needed on this claim as it involves the same set of facts, and the parties have fully addressed the merits of the claim in their summary judgment briefing.  *See Sprayregen v. Bank of Am., N.A.*, 2012 WL 2994633, at *4 (D. Vt. July 23, 2012).  Accordingly, I now deem the Complaint amended to

include a negligence claim against Officer Zheng, and I deem defendants' answer to the Complaint amended to deny this claim.

However, I deny plaintiff's motion for summary judgment on this claim. Questions of fact exist concerning whether Officer Zheng violated the law through intentional, rather than negligent, conduct. Plaintiff may submit his negligence claim in the alternative to the jury. *See, e.g.*, *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 88 n.14 (E.D.N.Y. 2012); *Bean v. City of Buffalo*, 1993 WL 152081, at *9 (W.D.N.Y. Apr. 26, 1993).

**e. Denial of the Constitutional Right to a Fair Trial**

Both plaintiff and defendants have moved for summary judgment on plaintiff's claim that Officer Zheng deprived him of his right to a fair trial by fabricating evidence against him and forwarding it to the Queens County District Attorney's office. Plaintiff alleges that Officer Zheng fabricated the allegations that he resisted arrest, ran a red light, and committed disorderly conduct.

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ashley v. City of N.Y.*, 992 F.3d 128, 139 (2d Cir. 2021) (internal quotation marks and alterations omitted). In *McDonough v. Smith*, 588 U.S. ___, 139 S. Ct. 2149, 2156–57 (2019), the Supreme Court, citing *Heck v. Humphrey*, 512 U.S. 477 (1994), held that a plaintiff could not bring a fabricated-evidence claim under § 1983 prior to the favorable termination of his prosecution.

Relying on *McDonough*, defendants assert that plaintiff's claim must be dismissed because an ACD cannot constitute a favorable termination for purposes of a fair trial claim. But,

in *Smalls v. Collins*, 10 F.4th 117, 144 (2d Cir. 2021), the Second Circuit rejected this same argument, holding that "[t]he dismissal of [] charges pursuant to an ACD [] constitute[s] a favorable termination within the meaning of *McDonough* and *McDonough* poses no bar to suit."

Defendants also contend that, because plaintiff was charged with Unlawful Possession of Marijuana under Penal Law § 221.05, and there is no dispute that he possessed marijuana in his backpack at the time of his arrest, he cannot show that any potentially fabricated evidence deprived him of liberty beyond what was justified by the charge of marijuana possession. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016), is instructive. There, the Second Circuit emphasized that, even where a plaintiff was lawfully arrested, he or she may still show that an officer's fabrication of evidence deprived him of liberty. It explained:

> [A]n arrest in itself may involve only a limited deprivation of liberty. The setting of bail, which may make the difference between freedom and confinement pending trial, and the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action, may depend on the prosecutor's and magistrate's assessments of the strength of the case, which in turn may be critically influenced by fabricated evidence. Thus, a further deprivation of liberty can result from the fabrication of evidence even if the initial arrest is lawful.

*Id.*

Plaintiff correctly notes that, at the time of his arrest in 2015, when a person was alleged to have committed an offense solely for marijuana possession under § 221.05, he or she could only be served with a desk appearance ticket and not placed into custody unless very specific conditions, none of which are alleged to be present here, were met.[8] *See* N.Y. Crim. Proc. Law § 150.75; *Idelfonso v. City of New York*, 187 A.D.3d 576, 577 (1st Dep't 2020). Because a jury could find that plaintiff's arrest and detention, as well as at least some of his 10 court appearances, resulted from the other charges brought against him—the ones plaintiff claims were

---

[8] On March 31, 2021, Penal Law § 221.05 was repealed.

fabricated, defendants are not entitled to summary judgment on the fabricated-evidence claim. *See Wellner v. City of New York*, 393 F. Supp. 3d 388, 395–96 (S.D.N.Y. 2019), *reconsideration denied*, 2019 WL 5538064 (S.D.N.Y. Oct. 25, 2019).

Plaintiff also seeks summary judgment on his fabricated-evidence claim, arguing that Officer Zheng fabricated that he resisted arrest, ran a red light, and committed disorderly conduct and that he was deprived of library as a result. I agree with plaintiff that, at a minimum, the video evidence does not seem to support a finding that he resisted arrest. Nonetheless, it must be left to the jury to determine, under the totality of the evidence, whether plaintiff has satisfied the elements of his claim. *See Snead v. City of New York*, 463 F. Supp. 3d 386, 394–96 (S.D.N.Y. 2020), *reconsideration denied sub nom. Snead v. LoBianco*, 2021 WL 861060 (S.D.N.Y. Mar. 8, 2021).

The parties' motions for summary judgment on plaintiff's denial of the constitutional right to a fair trial claim are denied.

### f. Negligent Hiring, Training, and Retention under State Law

Defendants seek summary judgment on plaintiff's state law claim against the City for negligent hiring, training, and retention. "A claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment." *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158, at *8 (S.D.N.Y. Apr. 15, 2004). "When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention." *Id.*

"Normally the question of whether a defendant employee was acting within the scope of his or her employment depends heavily on the facts and circumstances of the particular case, and

thus is appropriate for a jury." *Rowley v. City of New York*, 2005 WL 2429514, at \*13 (S.D.N.Y. Sept. 30, 2005). "But where a defendant employer admits its employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law." *Id.*; *accord McKnight v. City of Rochester*, 2015 WL 1462379, at \*3–4 (W.D.N.Y. Mar. 30, 2015). Here, "[d]efendants admit that the individual defendants were acting as agents and employees of the City of New York and were acting within the scope of their employment at all times relevant to the subject incident in this matter." Defs.' Memo. of Law at 12. Accordingly, defendants' motion for summary judgment with respect to this claim is granted, and the claim is dismissed.

### g.  Negligent Infliction of Emotional Distress under State Law

Defendants seek summary judgment on plaintiff's state law claim against Officer Zheng of negligent infliction of emotional distress ("NIED"), arguing solely that plaintiff cannot establish that the officer's alleged acts rose to the level of "extreme and outrageous conduct." While some courts have held that the tort of NIED requires, among other things, "extreme and outrageous conduct," *see, e.g.*, *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297–98 (S.D.N.Y. 2015); *Holmes v. City of New York*, 178 A.D.3d 496, 496 (1st Dep't 2019), some New York courts have disavowed that requirement. *Stephanie L. v. House of the Good Shepherd*, 186 A.D.3d 1009, 1013, *reargument denied*, 189 A.D.3d 2171 (4th Dep't 2020); *Taggart v. Costabile*, 131 A.D.3d 243, 253−55 (2d Dep't 2015). Most important for purposes of this proceeding, the Second Circuit, citing *Taggart*, 131 A.D.3d at 252−53, does not list "extreme and outrageous conduct" as an element of the tort. *Francis v. Kings Park Manor, Inc.*, 992 F.3d

67, 81 (2d Cir. 2021).  Defendants' motion for summary judgment on plaintiff's NIED claim is thus denied.[9]

### h.  Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (internal quotation marks omitted). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  Because I have denied defendants' summary judgment motion on plaintiff's constitutional claims of excessive force and fabricated evidence, their motion on this claim is also denied.  *Rowell v. City of New York*, 2018 WL 4682219, at *6 (S.D.N.Y. Sept. 28, 2018).

## V.  Conclusion

For the reasons stated above, plaintiff's motion for partial summary judgment is denied, and defendants' motion for partial summary judgment is granted in part and denied in part. Specifically, defendants' motion is granted as to plaintiff's claim of negligent hiring, training, and retention against the City, and that claim is dismissed.  Defendants' motion is otherwise denied.

---

[9] Plaintiff acknowledges in his opposition that the claim is pled in the alternative and should be dismissed if Officer Zheng is found liable for assault or excessive force.  *See Hall v. City of Buffalo*, 151 A.D.3d 1942, 1944 (4th Dep't 2017).

Plaintiff's First Amended Complaint is deemed amended to add a negligence claim against Officer Zheng.  Defendants' answer to the First Amended Complaint is deemed amended to deny this claim.

Plaintiff's claims against Sergeant Sarrantino are dismissed.   The following claims against Officer Chen are also dismissed: those relating to the vehicular pursuit and plaintiff's fall, denial of constitutional right to a fair trial, negligence, and negligent infliction of emotional distress.

**SO ORDERED.**

_____/S/_____
**NINA GERSHON**
**United States District Judge**

March 28, 2022
Brooklyn, New York